IN THE CIRCUIT COURT FOR THE COUNTY OF BENTON.

## J. D. RUSSELL, PLAINTIFF, v. H. C. LEWIS, DEFENDANT.

COUNTY COURT.—PROBATE.—JURISDICTION.—The county court is to be regarded in probate proceedings as a superior jurisdiction; it being a court of record deriving its power as a probate court from the constitution. And when its orders for the sale of real and personal property of deceased persons appear to have been regularly made, reciting all the jurisdictional facts necessary to authorize the order, no presumption will be indulged against the recitals, and extrinsic evidence of their truth is not necessary, but the burden of showing that the court has not acquired jurisdiction is on the party who disputes the truth of the recital.

ORDER OF SALE.—MISTAKE IN DATE.—PRESUMPTION.—The order of sale recited notice to all persons "to appear on this day;" an order to show cause was made returnable on the fifth of April, but the heading of the order of sale was, "at a term of the court began and held on the first Monday, the fourth of April," etc.: *Held*, that a mistake in making up the record will be presumed, rather than that the order was made before the return day.

*Chenowith*, for plaintiff.

*Strahan & Burnett*, for defendant.

THAYER, J. This was an action to recover certain real property, situate in Benton County, Oregon. The plaintiff claimed title to it as one of the heirs at law of Robert W. Russell, deceased.

The defendant claimed title to the property by virtue of certain proceedings in probate, had in the county court of Benton County, Oregon, under which the property was sold, and claimed to have been acquired by the defendant, through mesne conveyances from the purchasers under the probate proceedings.

It appears that Robert W. Russell died in said county of Benton, about the first of the year 1860, intestate, seized of certain real estate, including the property in question; that he left no wife, children, father nor mother; that the plaintiff was a brother of deceased, and entitled to inherit the one third of his property, and would be the owner of a one third interest in the land in question, if not divested of title by the probate proceedings. It was admitted in the outset,

upon the trial, that one Gallatin Adkins was, on the sixth
day of February, 1860, duly appointed by the said county
court for Benton County, the administrator of the estate of
the said Robert W. Russell, and that he duly qualified and
entered upon the discharge of his trust as such administra-
tor. The defendant gave in evidence, subject to objection
by plaintiff's counsel, certain orders granted by the said
county court for Benton County, during the year 1864, in
proceedings in probate, in the matter of the estate of the
said Robert W. Russell, deceased, among which was an or-
der to show cause why the property in question should not
be sold; also an order confirming the sale thereof, reported
by the administrator to have been made, and a deed exe-
cuted by the said administrator upon such sale to certain
parties, and plaintiff had admitted that defendant had ac-
quired all the right in the property which said parties
received under said administrator's said deed. The several
orders appeared to have been regularly made and recited all
the jurisdictional facts necessary to authorize the said coun-
ty court to grant such orders, and the said deed of the ad-
ministrator was regular upon its face, and appeared to have
been executed in accordance with said orders, and the pro-
ceedings thereupon had. Plaintiff's counsel contends, how-
ever, that neither of said orders, nor the administrator's
deed, should be admitted in evidence without first proving
the necessary facts authorizing county courts to make
such orders in like cases. This presents the main question
in the case. That is, whether county courts of the state of
Oregon, in probate proceedings, are to be regarded as courts
of inferior or superior jurisdiction. If those courts, in the
exercise of probate jurisdiction, are to be regarded as courts
of special and limited jurisdiction, then the position of
plaintiff's counsel is correct. But, on the contrary, if they
are courts of general jurisdiction in such cases, their juris-
diction to make orders of that character will be presumed
without any proof of the particular facts necessary to confer
jurisdiction. These various orders of the county court for
Benton County were judicial records. (See sec. 719, Civil
Code, Stat. p. 328.) "The jurisdiction sufficient to sus-

tain a record is jurisdiction over the cause, over the parties and over the thing, when a specific thing is the subject of the determination." (See Stat. p. 330, sec. 732.) The jurisdiction of county courts, in probate matters, is derived from the constitution of the state of Oregon. (See sec. 12, art. VII, Const. Stat. p. 114.) And this jurisdiction, among other things, is to order the sale and disposal of the real and personal property of deceased persons, and is made exclusive. (See Stat. p. 365, sec. 869.) Section 731 of the civil code provides how any judicial record may be impeached, and the presumption arising therefrom overcome, by evidence of a want of jurisdiction. These orders were necessarily judicial records, in every sense of the term; they were the record of the proceedings in a court of justice, being a court of record, having general jurisdiction. (See sec. 1, art. VII, Const., which is as follows: The judicial power of the state shall be vested in a supreme court, circuit court, and county court, which shall be courts of record, *having general jurisdiction,* to be defined, limited and regulated by law, in accordance with this constitution. Justices of the peace may also be invested with *limited judicial powers,* and municipal courts may be created to administer the regulations of incorporated towns and cities.) This was a part of the judicial power of the state. There is no very satisfactory test to distinguish between superior and inferior courts. The supreme court, in the case of *Grignons' lessee,* v. *Astor* (2 How. U. S. Rep. p. 341, a case similar to this), said that "the true line of distinction between courts of general jurisdiction and courts of special and limited jurisdiction is this: 'A court which is competent by its constitution to decide on its own jurisdiction, and to exercise it to a final judgment, without setting forth in their proceedings the facts and evidence on which it is rendered, whose record is absolute verity, not to be impugned by averment or proof to the contrary, is of the former description; but a court which is so constituted that its judgment can be looked through for the facts and evidence necessary to sustain it, whose decision is not evidence of itself to show jurisdiction, is of the latter description.'" But the difficulty is to ascer-

tain when a particular court is competent to decide on its jurisdiction. The rule which classifies the two kinds of jurisdiction cannot be a mere arbitrary direction.

The court, however, in the last case referred to, did say that all courts of record which have an original general jurisdiction over any particular subject are not courts of special or limited jurisdiction. In the case of *Kemp, lessee,* v. *Kennedy* (5 Cranch U. S. Rep. p. 173), the question arose as to whether the court of common pleas of the state of New Jersey was a superior court of general jurisdiction, or a court of special and limited jurisdiction. That was an action of ejectment for the recovery of certain real property, which had been adjudged by the common pleas court to have been forfeited by one Kemp, for treason against the laws of that state. Chief Justice Marshall, in delivering the opinion of the court, says:

"In considering this question, the constitution and powers of the court, in which the judgment referring to the judgment of forfeiture was rendered, must be inspected. It is understood to be a court of record, possessing, in civil cases, a general jurisdiction to any amount, with the exception of suits for real property. * * * * In treason the jurisdiction was over all who could commit the offense. * * * * * In respect to treason, then, it is a court of general jurisdiction, so far as respects the property of the accused." And the court held that while the judgment of forfeiture was erroneous, yet it was not void; that it had the effect to divest Kemp of the title to his property. Some of the New York courts, in determining this question, say that "to constitute a court a superior court, as to any class of actions, within the rule that the jurisdiction of a superior court may be presumed, its jurisdiction of such actions must be unconditional; so that the only thing essential to enable the court to take cognizance of them is the acquisition of jurisdiction of the person of the parties. (See Abbot N. Y. Digest, vol. 2, sec. 8, p. 261.)

I think the rule above stated goes too far, as under that test it would be difficult to see how the circuit courts of the United States could be regarded as superior courts in the

exercise of civil jurisdiction, as their jurisdiction in civil cases is not *unconditional*, but depends upon special circumstances, such as the controversy being between citizens of different states, and yet they are admitted to stand on the same footing with courts of general jurisdiction. (See *Buchanan* v. *Cowell*, 1 N. Y. Rep. p. 507.)

It appears to me that a court of record, vested generally by the constitution with any particular part of the judicial power of the state, in the exercise of that jurisdiction must, in the technical sense of the word, be considered a court of superior jurisdiction. And I do not see how, under a correct construction of the several provisions of the constitution and statutes before mentioned, they could be regarded otherwise. In that view of the case the authority to hear and determine the matter of the sale of property in question must be presumed, and that presumption can only be overcome by evidence of a want of jurisdiction in the court to determine that matter. I do not question the right to impeach the adjudication. No court can render a binding or valid judgment without first having jurisdiction over the subject matter; and, second, acquiring jurisdiction over the party to be effected, and as to whether a court had jurisdiction when it has assumed to decide is always a pertinent subject of inquiry, either in direct or collateral proceedings. (See the *Chemung Canal Bank* v. *Judson*, 8 N. Y. Rep. court of appeals, p. 254; *Dobson* v. *Pearce*, 11 Id. 164, per W. F. Allen, J.) This right, however, to inquire into the jurisdiction of a court does not, at least in the determining upon the validity of proceedings in our own courts in collateral actions, include the right to controvert the return of an officer, showing that service of process has been regularly made. The law, for certain reasons, founded on public policy, makes such returns in collateral proceedings conclusive, but this does not deny or affect the right to disprove the bare presumption of jurisdiction, nor preclude a party from controverting a mere recital in the record. (See 4 Conn. p. 280; 5 Wend. 148.)

In the case under consideration, it has not been shown that the county court for Benton county did not acquire

jurisdiction of the probate proceedings. It was necessary, of course, that the court first acquire jurisdiction in order to make a judicial record of any validity. But as jurisdiction in this case is presumed in favor of the record; the burden of proof that it did not acquire jurisdiction was with the plaintiff. The plaintiff's counsel also insists that the order of sale was irregular and void, for the reason that it was made on the fourth day of April, 1864, when the order to show cause why the sale should not be decreed was not returnable until the next day—the fifth day of April, 1864. I do not propose to decide what would be the effect of such an irregularity, if such were the fact; but I am not satisfied that such is the case. The order of sale recites as follows: "That legal notice has been given, notifying all persons to appear upon this day," which refers to the day on which it was granted, as there is no doubt but that the order to show cause was returnable on that day. It would be inferred, however, from the caption of the order of sale, that it was granted on the fourth day of April. I cannot believe that the county court would grant an order requiring persons interested to show cause, on the fifth day of April, why the property should not be sold, and then decree the sale on the fourth day of April. If the evidence fully established the fact, I would have no other alternative; but from all I can see I am inclined to believe there has been a mistake in making up the record, that the order of sale was not granted on the day the caption would indicate. Mistakes of that character will be presumed rather than to suppose a court would commit such an apparent blunder. (See *Moore* v. *Tracy*, 7 Wend. p. 231.) The heading or the order is as follows: "At a term of the court began and held on the first Monday, the fourth day of April," &c. Then follows the proceedings. I do not think it a necessary inference from that fact, that the order was granted on the first day of the term. It might have been granted on a subsequent day in the term, and I presume it was in fact granted upon the fifth instead of the fourth day of April.

Judgment for defendant, with costs and disbursements.