MARIA COLLINS *et al.* (propounders) v. J. K. COLLINS and W. J.
    COLLINS (caveators), *In re* the will of J. T. Col-
        lins, deceased.

(Decided October 24, 1899.)

*Probate—Caveat—Appeal—Practice.*

1. *Objectors* to the probate of a will, who attend before the Clerk and
    contest the will, with counsel and evidence, are virtually
    caveators, and may be so termed.

2. The probate is a proceeding *in rem*, of which the statute confers
    jurisdiction on the Clerk and Court, and to which there are
    no parties, strictly speaking, who can withdraw or nonsuit the
    case.   Public policy and the law require a speedy adjudication,
    regardless of objecting persons.

3. Where a paper writing was seen in testator's possession before
    his death and found among his valuable papers the next day
    after his death—the possession of this instrument, in due form
    *on its face,* at his death in *prima facie* proof that it is in fact,
    what it purports to be, his last will and testament, subject of
    course to be rebutted, as in other cases of disputed fact.

4. The admission of irrelevant testimony will not authorize a new
    trial, unless it appears that the objecting party was prejudiced
    thereby.

5. Where, upon an appeal from the Clerk, an issue of *devisavit vel
    non* is submitted to the jury—who say, "Yes, every part
    thereof"—the judgment should direct the Clerk to take other
    necessary proceedings therein, as required by law.

ISSUE of *devisavit vel non* in the matter of the will of J. T.
Collins, tried upon appeal from the Clerk, before *Moore, J.,*
at Spring Term, 1899, of FRANKLIN Superior Court.

His Honor submitted his charge in writing—embracing a
summary of the evidence.

"The only issue submitted for your consideration in this
case is, 'Is the paper writing offered for probate, or any part

thereof, and if so, what part, the last will and testament of James T. Collins?'

"The burden of proof on this issue is on the propounders, who are Maria Collins, Peter Collins, T. M. Collins, A. M. Davis and J. C. Davis, her husband, J. C. May and Ada May, his wife, E. H. Gupton, E. D. Gupton, Lena Gupton, L. K. Gupton, Kate Gupton, and Percy Gupton, and William Leonard. The burden of proof being on the propounders, the law requires them to satisfy you by the greater weight of the evidence that the paper writing propounded, or offered for probate by them, is the last will and testament of James Collins, deceased.

"The propounders contend, and insist, that the paper writing offered by them, and every part thereof, is the last will and testament of James Collins, deceased. They say that they have shown by a preponderance of the evidence that James Collins executed this paper writing at a school house near his home by making his mark in the presence of W. T. Davis, who had written the will at the request of Collins, and who at the request of Collins signed his name as an attesting or subscribing witness to the will; that the alleged testator, Collins, afterwards sent for Dr. Siles, the other subscribing witness, and in the presence of Henry Pearce, one of the witnesses, at his house, requested Dr. Siles to witness the will; and that thereupon, at the request of the alleged testator, and in his presence, Dr. Siles did attest the will by signing his name thereto as a subscribing witness.

"W. G. Collins and J. K. Collins, though not technically what the law call caveators, object to the probate of the alleged last will and testament of James Collins, and insist that the evidence in this case does not warrant the jury in finding that the paper writing offered is the will of the alleged testator.

COLLINS *v.* COLLINS.

"If you find from all the evidence in this case that James Collins, in the presence of the witness Davis, executed the paper writing offered for probate by making his mark thereto, understanding at that time that he was making and executing his will, and intending that the paper which he then executed should operate as his will; that said Davis thereupon, at the request of said Collins, and in his presence, signed his name as a subscribing witness to said paper writing; that thereafter said James Collins acknowledged the signing and execution of said paper writing as his last will and testament in the presence of David N. Siles, and requested said Siles to sign his name to said will as an attesting or subscribing witness; that thereupon said David N. Siles did, in the presence of said Collins, 'subscribe' his name as such witness to said will; that the paper writing now offered is the paper executed by said James Collins, and witnessed by said Davis and Siles, at [and] that at the dates of signing and acknowledging the will, the alleged testator, Collins, was of sound and disposing mind and memory; then, if you find all these things as facts, you will answer the issue 'Yes, every part thereof,' otherwise your answer to the issue will be 'No.'

"The law requires that a will of the kind which is now offered for probate shall be written in the testator's lifetime, and signed by him or some other person in his presence, and by his direction, and subscribed in his presence, by two witnesses at least.

"You will consider all the evidence in the case and ascertain the facts which you are required to find from all of it.

"There is no conflicting evidence as to the writing and signing of the will, subscribing of it by Davis, and the genuineness of the signature of Dr. Siles, and if you believe the evidence you will find that the paper writing offered was written in the lifetime of the alleged testator, was signed by

him by his making his mark, and was witnessed by Davis in his presence and at his request.   You will likewise, if you believe the evidence, find that the signature of the witness Dr. Siles is his genuine signature.   This will bring you to the consideration of the question, 'Did the witness Dr. Siles sign his name to the alleged will in the presence and at the request of the alleged testator, James Collins ?'

"In deciding this question you will consider the evidence of Henry Pearce, who says that he saw Siles sign his name to a paper as a witness, the evidence of Davis, who says that Collins told him that he intended to have Siles witness the will, the evidence of the witnesses, who say that Dr. Siles was in the habit of visiting the alleged testator, and was his physician, the evidence as to what the alleged testator said about the will to the witness King, and the evidence as to the finding the will in the alleged testator's chest after his death. You will also consider the evidence offered for the purpose of contradicting the witness Henry Pearce, this being the evidence of Mr. Williams, the Clerk, and the evidence taken before the Clerk at the hearing before him.

"If you, having found the other facts enumerated, find that the will was witnessed by Dr. Siles in the presence and at the request of the alleged testator, who at the time declared that the paper writing now offered was his will, you will answer the issue 'Yes, every part thereof.'

"You will consider all the evidence, and the bearing, demeanor and appearance of each witness.   You are the sole judges of the testimony, and it is your duty to remember the evidence for yourselves."

To the charge, as given, the said J. K. Collins and W. G. Collins excepted.

The jury responded to the issue, "Yes, every part thereof."

The said J. K. Collins and W. G. Collins moved to set

aside the verdict upon the ground that it was not supported by the evidence, and that it was against the weight of the evidence; motion overruled, and J. K. Collins and W. G. Collins excepted.

They then moved for a new trial for the errors and exceptions made and taken during the course of the trial.

Motion overruled and the said J. K. and W. G. Collins excepted.

The Court signed judgment, as follows:

This cause came up to this term on the appeal of the propounders from the judgment of W. K. A. Williams, Clerk of this court, refusing to admit the paper writing purporting to be the will of J. T. Collins to probate as such will, and was tried before the Hon. Fred. Moore, Judge presiding, and a jury.

The following issue was submitted to the jury:

"Is the paper writing offered for probate, or any part thereof, and if so, what part, the last will and testament of James T. Collins?"

And the jury respond to that issue, "Yes, every part thereof."

Now, on motion of C. M. Cooke & Son, attorneys for the propounders, it is ordered and adjudged by the Court, that the said paper writing, and every part thereof, is the last will and testament of James T. Collins.

The Clerk of the Court will record the said paper writing as proved to be the last will and testament of J. T. Collins.

The costs of this trial will be taxed against the estate of J. T. Collins, to be paid by the personal representatives.

FRED. MOORE,

*Judge Presiding.*

Caveators appealed to Supreme Court.

COLLINS *v.* COLLINS.

*Mr. F. S. Spruill,* for appellants.
*Messrs C. M. Cooke & Son,* for appellees.

FAIRCLOTH, C. J.   In the matter of J. T. Collins's will: A paper writing purporting to be the last will and testament of J. T. Collins was exhibited to the Clerk for probate by the widow and heirs of the deceased, except J. K. Collins and W. G. Collins, who, without entering a formal caveat, objected to the probate and recording of said instrument. The Clerk made inquiry by taking evidence of witnesses, examined and cross-examined by the two objecting heirs.   The Clerk adjudged that the motion of the propounders for probate be denied.   The propounders appealed to the Superior Court, and the Clerk certified his acts and doings and entered the case on the civil issue docket.

At April Term, 1899, the matter was tried by a Judge and a jury, it appearing to the Court that all parties interested in said will or in anywise to be affected thereby were then before the Court, including those objecting, and that they were also before the Clerk in his inquiry.   The objecting parties at the trial, without entering any formal caveat, insisted that there was nothing for a jury to try—that a question of law only was presented by the appeal, and that that depended upon the evidence and ruling before and by the Clerk.   His Honor held otherwise, and proceeded with a jury to try the issue: "Is the paper writing offered for probate, or any part thereof, and if so, what part, the last will and testament of James T. Collins?"   To which the jury responded, "Yes, every part thereof."

We think enough appears in the record certified by the Clerk to the Superior Court to justify the Judge in ordering the will to be proved in solemn form.   The issue submitted is in the usual form. Eaton's Forms.   See also *Cornelius v. Brawley,* 109 N. C., 542.

For some reason, J. K. Collins and W. G. Collins omitted to enter a formal caveat at each trial, although they were present, objecting, examining and cross-examining witnesses and resisting the probate of the will. Let them call themselves "objectors" if they prefer it, but they have been granted every benefit and privilege, and they accepted them, that they could have enjoyed if they had called themselves "caveators."

This is a proceeding *in rem* and the statute confers jurisdiction on the Clerk and Court. There are no parties, strictly speaking, certainly none who can withdraw or take a nonsuit, and thus put the matter where it was at the start, as in actions between individuals. A nonsuit in the latter case affects no one but the litigants; in the former, creditors, legatees and distributees are interested and they are stayed until the question of testacy or intestacy is determined. The Court having *jurisdiction,* public policy and our statutes require that this preliminary question should be determined as soon as practicable, and require the Court to do it, regardless of objecting persons. *Hulson v. Sawyer,* 104 N. C., 1. A living witness to the will testified to his and the testator's signing this script in the presence of each other. The main matter controverted was whether Dr. Siles, another witness, then dead, had signed the instrument offered for probate in the manner required by law. His signature thereto was proved and admitted to be genuine, but it was insisted that the evidence failed to identify that paper as the one signed by the witness Siles and the testator as his will. There was much evidence pro and con, some witnesses testifying that they saw Siles sign in the presence of the testator and at his request, and from its size and appearance they believed the script exhibited in court was the same, although they could not read or write; others testifying to other facts and cir-

cumstances, and some conflicting statements were made. These matters went to the jury for their opinion, and they gave it. The admission of irrelevant testimony will not authorize a new trial unless it appears that the objecting party was prejudiced thereby. There was no serious objection made to the competency of the deposing witnesses. There were some exceptions to their statements, but they seem not well founded. There were also prayers for instructions, but the charge as given covered all that the objecting parties were entitled to, and we are unable to discover any error in the charge in other respects.

The evidence shows that this paper writing was seen in the testator's possession before his death, and was found among his valuable papers the next day after his death. The possession of this instrument in due form *on its face* at his death is *prima facie* proof that it is, in fact, what it purports to be, his last will and testament, subject, of course, to rebuttal, as in other cases of a disputed fact.

Although the proceeding was somewhat novel, still the real contention was met and tried, and the judgment is sustained. We think, however, *as the probate is in the verdict,* and the Probate Judge and the Clerk being the same person, and in the same court, the judgment should direct the Clerk to take other necessary proceedings therein as required by law.

Affirmed.