Argued July 7, reversed July 30, former opinion modified on rehearing November 23, 1915.

# YEATON v. BARNHART.

(150 Pac. 742; 152 Pac. 1192.)

**Executors and Administrators—Sale of Property—Collateral Attack.**

1. Defenses, interposed in an action by a purchaser at an administration sale to pay debts of the estate to enjoin the sale of real property and to quiet the title thereto, which attack the power of the court to order the sale, are equivalent to collateral attacks on the order of the County Court directing the sale and are unavailing, unless the order assailed was necessarily void.

**Executors and Administrators—Sale of Land—Jurisdiction of County Court.**

2. Under Article VII, Section 1, of the Constitution, vesting the County Court, among others, with general jurisdiction to be defined and regulated by law, Section 12, giving such court jurisdiction pertaining to Probate Courts, and Section 13, authorizing the county judge to grant preliminary injunctions and such other writs as the legislature may authorize him to grant, and Section 936, subdivision 5, L. O. L., giving it exclusive probate jurisdiction in the first instance to order the sale and disposal of the property of decedents, the County Court is a court of general and superior jurisdiction in probate matters, and is vested with limited judicial functions in the common-law sense, which it may exercise in all prescribed matters beyond its special statutory authority in the transaction of county business, and, on petition for the sale of the realty of a decedent based on an allegation of facts requiring an exercise of its power, it could determine its jurisdiction, which determination was conclusive, unless reversed on appeal or avoided for fraud in a direct proceeding.

**Executors and Administrators—Sale of Realty—Sufficiency of Petition.**

3. Under Section 1135, L. O. L., declaring that the court in probate proceedings exercises its powers by means of an affidavit or the verified petition or statement of a party, and Section 1253, providing that a petition for the sale of the real property of a decedent shall state the amount of the sales of personal property, the condition and probable value of the different lots of land, the amount and nature of any liens thereon, and the names, ages and residences of the heirs of the deceased, a petition by an administratrix, duly verified, showing a necessity for the sale, particularly describing the real property involved, in which the errors or defects, in some respect material, might have been avoided on appeal, but where an appeal had become barred and the order had become the foundation of title to property, was sufficient.

**Judgment—Lien—Interest of Heirs.**

4. Where a daughter of an intestate inherited his real property under Section 7348, L. O. L., subject to her mother's dower under Section 7286, and to the indebtedness of the estate and the

expense of administration, any judgment rendered against the daughter and docketed prior to the day when she, as administratrix applied for leave to sell the realty to pay debts of the intestate became a lien on her interest therein.

#### Judgment—Docketing Justice's Judgment—Lien.

5. Section 2442, L. O. L., provides that a judgment of a Justice's Court for the recovery of money does not become a lien upon real property until a transcript thereof has been filed with the county clerk. Section 2449 provides that judgment duly docketed in the Circuit Court may be enforced as a judgment of that court. Section 771 requires the justice certifying the transcript to state that the copy had been compared by him and is a correct transcript of the judgment. Section 201 provides that a judgment of a Circuit Court must be entered by the clerk within the day it is rendered, and Section 205 requires the clerk immediately after recording the judgment to make a memorandum thereof in the lien docket. *Held*, that judgments against the interest in real property inherited by defendant from her father, not filed as required by such provisions before her application, as administratrix, to sell realty of the estate to pay debts, were not liens on her property, that judgments the transcripts whereof were not certified as required by statute created no liens thereon, but that a judgment duly docketed before such application became a lien thereon.

> [As to docketing of judgment by justice of the peace, see note in 40 **Am. Dec.** 386.]

#### Evidence—Presumptions—Judicial Actions.

6. It is presumed that official duty has been regularly performed.

#### Executors and Administrators—Administrator's Sale—Effect on Dower.

7. A sale of real property by an administratrix to pay the debts of the deceased did not divest the widow of her right of dower in the premises.

#### Executors and Administrators—Sale of Property—Interest of Heirs—Judgment Against Heirs.

8. An administrator's sale of the real property of an intestate to pay his indebtedness deprives the heirs of their estate in the premises, since their rights are inferior to the demands of the creditors, and necessarily destroy the lien upon such land of any judgment rendered against the heir; but, in case of such sale, the judgment creditor of an heir is not without remedy, as when the distributive share of the heir has been ascertained and ordered by the court to be paid, and such proportionate part of the estate is no longer in the custody of the law, he may thereupon garnish it in the hands of the administrator.

### ON PETITION FOR REHEARING.

#### Executors and Administrators—Sale of Real Estate—Collateral Attack.

9. Where an administrator's petition for the sale of real estate was sufficient to invoke an exercise of jurisdiction, an order based thereon could not be set aside on collateral attack, though the application and subsequent proceedings might have been vacated on direct appeal.

**Executors and Administrators—Sale of Property—Interest of Creditors of Heirs.**

10.   A creditor of an heir of an intestate who has not secured any lien on the heir's interest in real estate, cannot assert any interest therein as against a purchaser at an administrator's sale.

**Executors and Administrators—Sale of Property—Interest of Creditors of Heirs.**

11.   A creditor of an heir of an intestate who has acquired a lien against the heir's interest in real estate, and who has actual notice of an application and proceedings for the sale of the land of the intestate or who knows facts such as would put a person of ordinary prudence on inquiry, is guilty of laches precluding any assertion of his judgment lien against the interest in the real estate as against a purchaser at the administrator's sale, where he fails to interpose objections in the proceedings.

**Pleading—Complaint—Demurrer—Discretion of Trial Court.**

12.   Whether a defendant demurring to the complaint shall be permitted to answer over rests in the discretion of the trial court, and, if leave is granted, an answer may be filed controverting the allegations of the complaint.

**Executors and Administrators — Sale of Property — Rights of Lien Claimants of Heirs.**

13.   Where a creditor of an heir of an intestate had acquired a lien against the heir's interest in the land of the intestate, and he had no actual notice of proceedings for the sale of the land by the administrator until after the sale was completed, his lien must be decreed against the interest the heir had in the land prior to the sale.

From Yamhill: WEBSTER HOLMES, Judge.

Department 1.   Statement by MR. CHIEF JUSTICE MOORE.

This is a suit to enjoin the sale of real property and to quiet the title thereto.   The material averments of the complaint, as far as involved herein, are to the effect: That the plaintiffs, Elias M. Yeaton and Alice E. Yeaton, are husband and wife, and the defendant W. G. Henderson is the duly elected, qualified, and acting sheriff of Yamhill County, Oregon.   That Stephen Brynjolfson died intestate in that county, November 13, 1909, seised in fee simple of lot 9 in block 2, and lots 7, 8 and 9 in block 3, of Foster's Addition to the town of Sheridan in that county, and leav-

ing as his only heirs the defendants Lena Yeaton, a
daughter 26 years old, and Helga Brynjolfson, his
widow. That on November 19, 1909, the County Court
of Yamhill County duly appointed Lena Yeaton admin-
istratrix of the decedent's estate, the personal prop-
erty of which was of the value of $50 and was wholly
exhausted in paying a part of the indebtedness which
amounted to $300. That on March 20, 1913, the admin-
istratrix applied to the County Court for leave to sell
the real property of the estate to pay the indebtedness
thereof and the costs and expenses of the administra-
tion. That a citation was thereupon issued to the
widow and personally served upon her at Portland,
Oregon, where she was then residing, requiring her
to appear at the courtroom in Yamhill County on April
5, 1913, and show cause why the petition should not
be granted, but she did not appear or file any objec-
tions, and at the time last stated an order was made
directing a sale of the real property of the estate for
the purposes specified. That, complying with such
command, the administratrix published notice of the
sale in the "Sheridan Sun," a weekly newspaper,
printed in that county, for five successive weeks, be-
ginning April 10, 1913, and ending May 8th of that
year, and at the time designated she sold the premises
to the plaintiffs for $1,200; that being the highest sum
offered therefor. That the sale was duly confirmed,
May 27, 1913, whereupon the administratrix executed
to the purchasers a deed of the premises, receiving the
consideration therefor. That the plaintiffs instituted
a suit in the Circuit Court of the State of Oregon for
Yamhill County, against Andrew Pullen and others,
to quiet the title to such real property, and the defend-
ant C. L. Barnhart appearing asserted a lien upon
the land by reason of a judgment he had secured in

that court, September 21, 1911, against the defendant
Lena Yeaton and her husband for $291.80, whereupon
that suit of the plaintiffs was dismissed without preju-
dice.   That judgments were obtained against the de-
fendant Lena Yeaton and her husband in a Justice's
Court of Polk County, Oregon, by the defendants N.
Selig, June 30, 1911, for $103.98; Ethel Chambers,
August 15, 1911, for $35; and Ed Rich, August 25,
1911, for $110.79—and the costs and disbursements in
each action, transcripts of which judgments were filed
and docketed in Polk County, October 6, 1913, and in
Yamhill County, October 11th of that year.   That each
of such judgment creditors asserts some interest in or
claims a lien upon the real property hereinbefore
described.   That from the purchase price so paid by
the plaintiffs for the real property there was disbursed
by the administratrix $440.19 in discharging the in-
debtedness of the estate, giving the items thereof.
That, the administratrix having filed her final account,
notice thereof was published, requiring all persons in-
terested to file objections thereto prior to August 16,
1913, at 1 o'clock P. M.; but, none having been filed, the
account was allowed in whole on August 20, 1913, and
the estate ordered to be apportioned, whereupon the
defendants Lena Yeaton and Helga Brynjolfson each
received and retained one half of $759.81, the re-
mainder of the purchase price, as her distributive
share.   That each of the defendants had notice and
knowledge of all the proceedings in the administration
of the decedent's estate referred to herein, but neither
of them made any objections to the settlement of the
final account or undertook to secure any part of the sum
ascertained to be due Lena Yeaton, by reason whereof
each is and ought to be estopped now to assert or claim
any lien upon the real property adverse to the plain-

tiffs. That on September 10, 1913, the defendant Barnhart caused to be issued on his judgment against the defendant Lena Yeaton and her husband an execution which was delivered to the defendant Henderson, who was directed to levy upon such real property, and unless he is restrained will obey the command, thereby clouding the title to the premises. That the plaintiffs had no notice or knowledge of any defect in the sale of the land or of any claim to or lien thereon, but purchased in good faith the premises of which they ever since have been in the possession, and that they have no plain, speedy or adequate remedy at law.

There are attached and made parts of the complaint copies of nearly all the proceedings in the administration of the decedent's estate, from the filing of the petition to sell the real property, and also of the judgments rendered in the Justice's Court, including transcripts thereof which have been filed for the purpose of creating liens on the premises. The defendants Selig, Rich and Ethel Chambers jointly demurred to the complaint, on the ground *inter alia* that it did not state facts sufficient to constitute a cause of suit, and the defendants Barnhart and Henderson also jointly demurred to the initiatory pleadings on the same basis. The defendants Lena Yeaton and Helga Brynjolfson did not appear in any manner. The demurrers were sustained, the temporary injunctions which had been granted were dissolved, and the suit dismissed, from which decree the plaintiffs appeal.

REVERSED. MODIFIED ON REHEARING.

For appellants there was a brief over the names of *Mr. Oscar Hayter* and *Messrs. Simpson & Lewis,* with an oral argument by *Mr. Hayter.*

For respondents there was a brief with oral arguments by *Mr. W. O. Sims* and *Mr. Roswell L. Conner*.

Opinion by MR. CHIEF JUSTICE MOORE.

The petition for the sale of the real property did not state the amount of the sales of personal property, the condition and probable value of the different lots of land, the amount and nature of any liens thereon, nor the names, ages and residences of the heirs of the deceased, as required by the statute: Section 1253, L. O. L. In *Wright & Jones* v. *Edwards,* 10 Or. 298, 307, a petition for leave to sell land belonging to a decedent's estate did not state the amount of sales of personal property, the charges, expenses or claims remaining unsatisfied, nor describe the real property to be sold, or state its condition or value, nor was the application verified by the administrator or anyone on his behalf, and it was held that the County Court did not secure jurisdiction of the subject matter, and, in ordering a sale of the premises, acted without authority, in consequence of which the proceedings were a nullity and conferred no right or title in or to the real property. In deciding that case, Mr. Justice LORD, speaking for the court, says:

"Where there is matter of substance upon which jurisdiction can hinge, mere errors or defects, although material in some respects, but which might have been avoided on appeal, cannot avail to condemn a judicial proceeding when, by lapse of time, an appeal is barred, which has become the foundation of title to property."

The plaintiff's counsel, relying on such excerpt to establish the rule governing this case, insists that, notwithstanding the failure of the application for leave to sell the real property to aver all the facts required

by the statute, the petition stated sufficient to invoke an exercise of jurisdiction by the County Court to authorize a sale of the land in order to discharge the indebtedness of the estate and to pay the expenses of the administration, and, this being so, an error was committed in dismissing the suit.

1. The answers interposed herein are equivalent to collateral attacks on the order of the County Court, directing a sale of the real property, and to render those defenses availing the order assailed must necessarily be void: Van Fleet, Col. Attack, § 3.

2. It becomes important therefore to consider the nature of that tribunal, and the character of the proceedings undertaken to secure a sale of the land. The organic law of the state declares:

"The judicial power of the state shall be vested in a Supreme Court, Circuit Courts, and County Courts, which shall be courts of record, having general jurisdiction, to be defined, limited, and regulated by law, in accordance with this Constitution": Article VII, Section 1, of the Constitution of Oregon.

"The County Court shall have the jurisdiction pertaining to Probate Courts, and boards of county commissioners, and such other powers and duties, and such civil jurisdiction not exceeding the amount or value of five hundred dollars, and such criminal jurisdiction not extending to death or imprisonment in the penitentiary, as may be prescribed by law": Id., § 12.

"The county judge may grant preliminary injunctions, and such other writs as the legislative assembly may authorize him to grant, returnable to the Circuit Court, or otherwise, as may be provided by law; and may hear and decide questions arising upon *habeas corpus;* provided, such decision be not against the * * proceedings of a court or judge of equal or higher jurisdiction": Id., § 13.

Section 1 of Article VII of the fundamental law was amended November 8, 1910 (see Laws 1911, p. 7), but does not alter the clauses quoted until future legislation is had upon the subject, and, no statute for the entire state having been enacted in any of these particulars, these original provisions of the Constitution remain intact. Pursuant to a grant of power by the organic act, a statute was enacted which provides:

"The County Court has the exclusive jurisdiction, in the first instance, pertaining to a court of probate; that is: * * (Subdivision 5) To order the sale and disposal of the real and personal property of deceased persons": Section 936, L. O. L.

In construing these clauses of the fundamental law and of the statutes passed in conformity therewith, it has been frequently held that in probate matters the County Courts in Oregon are tribunals of general and superior jurisdiction: *Russell* v. *Lewis,* 3 Or. 380; *Tustin* v. *Gaunt,* 4 Or. 305; *Monastes* v. *Catlin,* 6 Or. 119; *Slate's Estate,* 40 Or. 349, (68 Pac. 399); *Smith* v. *Whiting,* 55 Or. 393 (106 Pac. 791); *Hillman* v. *Young,* 64 Or. 73 (127 Pac. 793, 129 Pac. 124). It will thus be seen that the organic law invests the County Court with jurisdiction in probate matters and confers upon that tribunal limited judicial functions in the common-law sense, which power the court can exercise in all prescribed matters, beyond its special authority which is restricted to a performance of specific statutory duties pertaining to the transaction of county business. The County Court, having ordered a sale of the premises, necessarily decided that jurisdiction of the subject matter over which its authority extends had been secured in a proceeding based upon a proper allegation of the facts requiring an exercise of its

power; and, it being thus competent to determine whether or not the facts set forth in the petition to sell the real property to pay the debts incurred by the deceased were adequate, the determination is conclsuive against all the world, unless reversed on appeal or avoided for fraud in a direct proceeding: Woerner, Am. Law Admr. (2 ed.), § 145.

3. In the petition for leave to sell the real property of a decedent's estate it is the allegation of indebtedness that discloses the necessity for the sale and affords the basis upon which the order to that effect must necessarily be predicated, the description of the premises which supplies the object upon which the order of sale is to operate, and the verification of the petition that authorizes the County Court to determine the truth of the averments. In *Wright & Jones* v. *Edwards,* 10 Or. 298, 307, it will be kept in mind that the application for leave to sell did not state the indebtedness, nor describe the real property desired to be sold, nor was the petition verified.

The statute relating to probate proceedings, as far as material herein, reads:

"The court exercises its powers by means of * * an affidavit or the verified petition or statement of a party": Section 1135, L. O. L.

In *Rutenic* v. *Hamaker,* 40 Or. 444, 451 (67 Pac. 196, 199), it is said:

"The mode of proceeding in the administration of estates is in the nature of a suit in equity, as distinguished from an action at law; the County Court exercising its power by means of a citation to the party, and securing jurisdiction of the subject matter by means of a verified petition, enforcing its determination by orders and decrees."

An application for leave to sell real property is in the nature of an independent proceeding, in which the jurisdiction of the County Court to grant the relief desired must depend upon the sufficiency of the petition which, in order to defeat a direct attack, must substantially comply with the requirements of the statute. That court being a tribunal having general jurisdiction in probate matters, it would seem necessarily to follow that, if the application for leave to sell were lost, the order directing the sale would afford the requisite presumption that the petition contained the necessary averments. If it affirmatively appear from an inspection of a petition that it failed to show any necessity for the sale, or to describe the real property desired to be disposed of, jurisdiction of the subject matter would not thereby be secured and the order of sale must be void and vulnerable on collateral attack, since the proceedings to sell the land were probably in the nature of an application for an exercise of a special statutory power: *Wright & Jones* v. *Edwards,* 10 Or. 298, 307; *In re Noon's Estate,* 49 Or. 286 (88 Pac. 673, 90 Pac. 673).

The rule thus established is considered controlling as far as it is applicable to the facts there involved. It is believed, however, that such legal principle should not be extended, and where, as in the case at bar, the petition shows a necessity for the sale, particularly describes the real property involved, and is duly verified, there are matters of substance alleged upon which jurisdiction can hinge, and mere errors and defects, although material in some respects, and which might have been avoided on appeal, cannot avail to condemn the proceeding when, by the lapse of time, an appeal has become barred, and the order appropriate to the foundation of title to property: *Walker* v. *Goldsmith,*

14 Or. 125, 143 (12 Pac. 537); *Lawrey* v. *Sterling,* 41 Or. 518 (69 Pac. 460). See, also, Van Fleet, Col. Attack, §§ 815–829.

4. Stephen Brynjolfson having died intestate November 13, 1909, his daughter, the defendant Lena Yeaton, inherited the real property described herein, subject, however, to her mother's dower estate in the premises and to the indebtedness of the estate and the expense of administering thereon: Sections 7286, 7348, L. O. L. Any judgment rendered against Mrs. Yeaton that was properly docketed prior to March 20, 1913, when the application for leave to sell the land was made, became a lien upon her interest in the premises.

5. A judgment given by a Justice's Court for the recovery of money does not become a lien upon real property until a proper transcript thereof has been filed with the county clerk of the county where such judgment was rendered: Section 2442, L. O. L. When a judgment thus given has been duly docketed in the Circuit Court of the proper county, it may be enforced as a judgment of that court: Id., § 2449. In the judgments obtained in the Justice's Court of Polk County against Lena Yeaton and her husband by the defendants N. Selig, Ethel Chambers and Ed Rich, no transcript of either determination was filed with the county clerk of that county until October 6, 1913, nor in Yamhill County, where the real property is situated, until five days thereafter. Neither of these judgments was a lien upon the premises when on March 20, 1913, the administratrix filed her duly verified petition for leave to sell the land, and hence no necessity existed to make any mention of either in the petition. Copies of the transcript of such judgments were made parts of the complaint, having attached to each an attestation as follows:

"I hereby certify I am the duly elected, acting and qualified justice of the peace for above-named justice of the peace district for Polk County, Oregon; that the foregoing is a true transcript of the record of the above-entitled action, as the same appears in my docket.

"[Signed]    J. H. FLOWER,

"Justice of the Peace,

"4th Dist. Polk County, Oregon."

As this certificate did not state that the copy had been compared by the justice of the peace with the original, and that it was a correct transcript therefrom and of the whole or some specified part thereof, as required by statute (Section 771, L. O. L.), no lien was created by the docket entry made in Yamhill County as to either of those judgments: *Evans* v. *Marvin*, 76 Or. 540 (148 Pac. 1119).

6. The complaint does not state when the judgment secured by the defendant Barnhart against Lena Yeaton and her husband in the Circuit Court of Yamhill County, September 21, 1911, became a lien upon the real property hereinbefore described. A judgment given by a Circuit Court must be entered by the clerk within the day it is rendered: Section 201, L. O. L. Immediately after recording the judgment, the clerk is required to make a memorandum thereof in the lien docket: Id., § 205. Invoking the presumption that official duty has been regularly performed, it must be assumed that Barnhart's judgment was duly docketed and became a lien upon the premises prior to March 20, 1913, when the administratrix applied for leave to sell the land.

7. The sale of the real property by the administratrix to pay the debts of the deceased did not divest the widow of her right of dower in the premises: *House* v. *Fowle*, 22 Or. 303 (29 Pac. 890); *Whiteaker* v. *Belt*,

25 Or. 490 (36 Pac. 534); *In re Smith's Estate,* 43 Or. 595 (73 Pac. 336, 75 Pac. 133).

"It is evident that the purchasers at an administrator's sale," says a text-writer, "can acquire only that interest in the property sold which the deceased owned at the time of his death. The rights of others, holding by a title superior or equal to that of the deceased debtor, cannot be affected by the proceedings in the Probate Court": 2 Woerner, Am. Law of Admr. (2 ed.), § 482.

8. A sale by an administrator of the real property of an intestate to pay his indebtedness deprives the heirs of their estate in the premises, since their rights are inferior to the demands of the creditors: Id., § 471. As the right of an heir to a share of his ancestor's real property is extinguished by an administrator's sale of the premises to pay the indebtedness of the decedent, so, too, such sale when properly petitioned for and regularly conducted must necessarily destroy the lien upon such land of any judgment rendered against the heir: *Nichols* v. *Lee,* 16 Colo. 147 (26 Pac. 157). In case of a sale under such circumstances, the judgment creditor of an heir is not remediless; for, when the distributive share of the heir has been ascertained and ordered by the court to be paid, such proportionate part of the estate is no longer in the custody of the law, and may thereupon be garnished in the hands of the administrator or executor: *Harrington* v. *La Rocque,* 13 Or. 344 (10 Pac. 498). The defendants N. Selig, Ethel Chambers and Ed Rich made no effort to secure by garnishment any part of the distributive share ascertained to be due Lena Yeaton and ordered by the County Court to be paid to her, and since neither of these defendants had a lien upon the real property, he is not in a position to question the pro-

ceedings of that court whereby a sale of the premises was ordered or conducted.

When the petition for leave to sell the real property was filed, the judgment obtained by the defendant Barnhart against the defendant Lena Yeaton was a lien on her inherited interest in the premises. A sale of that interest to pay her father's indebtedness extinguished the lien, notwithstanding which the holder thereof could have enforced his demand against her distributive share of the estate, which right he did not elect to exercise. As the proceedings undertaken to sell the real property were not void, his remedy is now limited to a recovery against Mrs. Yeaton and her husband, and he has no legal claim against the plaintiff's premises.

The decree will therefore be reversed and one entered here quieting the plaintiff's title to the real property hereinbefore described; there apparently being no controversy as to the facts.    REVERSED.

MR. JUSTICE BENSON, MR. JUSTICE BURNETT and MR. JUSTICE HARRIS concur.

---

Modified November 23, 1915.

ON PETITION FOR REHEARING.

(152 Pac. 1192.)

*Mr. Oscar Hayter,* for the petition.

*Mr. W. O. Sims* and *Mr. Roswell L. Conner, contra.*

Department 1.    Opinion by MR. CHIEF JUSTICE MOORE.

It is contended in a petition for a rehearing that Section 1253, L. O. L., declares what facts an administrator or executor must set forth in an application to

a County Court for leave to sell any of the real property of a decedent's estate, and, this being so, the exclusion of any of these prerequisites and a determination that an exercise of the right to grant an order to sell such land could be predicated alone upon a verified petition which alleged only a mere indebtedness incurred by the deceased and described the premises desired to be sold, as stated in the former opinion, are erroneous.

No departure from a literal observance of all the requirements of the statute referred to in a direct attack upon the proceedings was sanctioned or even suggested. The holding complained of was based upon facts which must be stated in such petition, so that the order made thereon would not be set aside as void on a collateral attack. A text-writer, discussing this subject, remarks:

"Even if the sale should be held good as against a collateral attack—and it is distressingly uncertain to what extent the trial, and even appellate courts will go in that direction—yet many acts of commission or omission which will not be allowed to invalidate the transaction in a collateral investigation may in a direct proceeding subject the administrator to serious liability, the estate to loss and delay, and all parties concerned to vexatious and oftentimes ruinous litigation": Woerner, Admr. (2 ed.), § 463.

This author, commenting upon what the petition for a sale of real property must show, observes:

"Unless it appear from its averments that debts which the decedent had contracted during his lifetime are still unpaid, and that there are not personal assets sufficient to discharge them, but real estate which is liable for their payment, the court will have no power to order or license such sale, and therefore any order so made, and any sale thereunder, must be void": Id., § 468.

9. The petition for the sale of the land described herein, a copy of which is included in the transcript, conforms to requirements mentioned in the former opinion, and was sufficient to invoke an exercise of jurisdiction. The order based thereon is not void, and hence cannot be set aside upon a collateral attack, though the application for leave to sell the real property and all subsequent proceedings might have been vacated if an appeal therefrom had been regularly taken.

10. The defendants N. Selig, Ed Rich and Ethel Chambers, never having secured any liens upon Lena Yeaton's interest in the land, by reason of the defective certificates to their respective judgments, can legally have no further interest in this suit; and a decree should be entered enjoining each, and his successors and assigns, from claiming or asserting any interest in or right to the premises or any part thereof by reason of either of the judgments so rendered in the Justice's Court.

11. It is argued that the defendant Barnhart never had an opportunity to make a direct attack upon the proceedings instituted in the County Court to sell the real property, and could not have appealed from any order or decree rendered therein. This defendant could have gone into the County Court, set forth his judgment lien against the interest of Lena Yeaton in the real property, thereby becoming a party to the proceedings, so that he could have obtained the sum due her as an heir or sufficient thereof to satisfy his debt, and, if such relief were not awarded him, he could have appealed. He had no constructive notice of such proceedings having been instituted to sell the land, because his judgment lien was not set forth or referred to in the petition for a sale of the premises. If he had

actual notice of that application and of the subsequent proceedings based thereon, as alleged in the complaint and confessed by the demurrer, or knew of such facts relating thereto as would put a person of ordinary prudence upon inquiry, and from such investigation could have interposed objections to the petition, and the order of sale, or have claimed a share of the proceeds and failed or refused to do so, his laches preclude any assertion of his judgment lien against such interest in the real property.

12. The defendant Barnhart had his day in court when he demurred to the complaint, thereby interposing an answer which raised a question of law. Whether or not he should be permitted to answer will depend upon the discretion of the trial court to which the cause will be remanded. If such leave be granted, an answer may be filed controverting such actual notice, and if it be found that he was aware of the proceedings undertaken to sell the land, and made no effort to assert his rights, his interest in the premises by reason of the judgment lien should be barred.

13. If, however, the court should find he had no actual notice of these proceedings until after they were concluded, so that he could not have asserted and protected his rights, the lien of his judgment should be decreed against the interest Lena Yeaton had in the premises prior to the sale.

The former opinion will therefore be modified and the cause sent back for such further proceedings, relating to the defendant Barnhart, as may be necessary not inconsistent herewith.

REVERSED.    MODIFIED ON REHEARING.

MR. JUSTICE BENSON, MR. JUSTICE BURNETT and MR. JUSTICE HARRIS concur.