SCARBOROUGH *et al. v.* LONG *et al.*

No. 12217.  JUNE 14, 1938.  REHEARING DENIED JUNE 25, 1938.

*Brown & Brown, John D. Stewart, J. Wightman Bowden,* and *Edgar Watkins,* for plaintiffs.

*MacDougald, Troutman & Arkwright, T. M. Smith,* and *Tye, Thomson & Tye,* for defendants.

GRICE, Justice. This is another branch of the same litigation as that reported in *Scarborough* v. *Edgar,* 176 *Ga.* 574 (168 S. E. 592), and *Smith* v. *Scarborough,* 182 *Ga.* 157 (supra). One controlling question presented is whether it was error to sustain a demurrer to a petition which disclosed the following facts: A will was on file in the ordinary's office, together with an application to probate it. The application had been refused on account of the failure of the propounder to produce sufficient evidence to prove the will, though such evidence was accessible, no caveat having been filed. The order denying probate concluded as follows: "and it is therefore ordered that same be not admitted to record as such, and the petition is hereby denied; and an intestacy declared in said estate." Thereafter administration was applied for, and administrators were appointed. The administrators took charge of the estate and sold the lands. One of the defendants is the purchaser, and another the grantee of the purchaser at the administrators' sale. After the sale, the will was probated upon the application as originally filed. In it one of the present plaintiffs was named as a devisee; the other was the only heir of one who was also a legatee. Alleging that at the time of his death the testator owned the property, they brought the present action to recover the same from one who claims under a purchaser at the administrators' sale.

The facts involved in the instant case can not be distinguished from those in *Smith* v. *Scarborough,* 182 *Ga.* 157 (supra). The two cases involve the same will, the same order of the court of ordinary, and the same attack upon the alleged title of the purchaser at the administrators' sale, though the property itself is different, and the defendants in the trial court, defendants in error here, are not the same as in the case cited. The one controlling issue in the two cases is the same. Plaintiffs and defendants alike claim through J. W. Williams. If the title of Williams was divested by the sale of his administrators, the purchaser at the ad-

ministrators' sale acquired, as the latter's transferee, such title as could be successfully asserted against the claim of the plaintiffs as devisees under the will of Williams, which was probated long after the administrators' sale. The validity of the title acquired by the defendants depends upon the question whether or not the order of the court of ordinary appointing the administrator was void, there being at the time on file in the office of the ordinary an instrument purporting to be the will of Williams, and an application pending to probate it. It is insisted by counsel for the plaintiffs, the devisees, that under the circumstances the appointment of the administrators was void because of lack of jurisdiction in the court of ordinary. The premise of this insistence is that intestacy is an indispensable prerequisite to the grant of general administration, and various statutes of this State are cited, beginning with the act of December 23, 1789 (Marbury & Crawford's Digest, 216), and concluding with the act establishing the court of ordinary (Acts 1851-2, p. 91), to show that the right of appointment of an administrator was limited to the estates of persons dying intestate. The argument advanced is, that, since the statute provides that the court of ordinary can appoint general administrators only in case of intestacy, the court of ordinary is without jurisdiction to appoint general administrators except in cases where the decedent died intestate. It could with as much force be argued that since the statute provides that the court of ordinary can grant administration upon no person's estate who at the time of his death was not a resident of the county where the application is made, or, being a non-resident of the State, he has property in the said county, or a bona fide cause of action against some person therein (Code, § 24-1902), then the grant of administration of the estate of a person not included within the section was an act void ab initio, for want of jurisdiction. It has, however, been held in nearly all the States, including our own, that letters so granted, though voidable when properly assailed in a direct proceeding, are valid as against a collateral attack. 2 Woerner's American Law of Administration (3d ed.), 672-3; *Tant v. Wigfall*, 65 *Ga.* 412. The basis of the ruling in the *Tant* case, we think, is as applicable to the facts of the instant case as to that case, to wit, that courts of ordinary have general jurisdiction in the granting of letters of administration. The same observa-

tion is true of the case of *Maybin* v. *Knighton,* 67 *Ga.* 103, holding that a judgment of the court of ordinary appointing an administrator can not be collaterally attacked by showing that the applicant was not a citizen of Georgia, as generally required by our Code. We can not reconcile the holding of this court in *Martin* v. *Dix,* 134 *Ga.* 481 (68 S. E. 80), with the view, as contended by plaintiffs in error, that the fact that the decedent left a will, and therefore did not die intestate, deprived the court of ordinary of jurisdiction to grant administration. It is true that there the will had not been filed, and no application to probate it was pending; but if the jurisdiction of the court of ordinary to appoint an administrator be wanting when the deceased left a will, it would not, we apprehend, have been held in *Martin* v. *Dix,* supra, that where administration was granted, and subsequently a will was propounded, that fact did not ipso facto render void a sale of land by the administrator before the propounding of the will for probate.

The court of ordinary in the matter of administering estates is a court of general jurisdiction; and therefore its judgments can not be collaterally attacked, unless the record negatives the existence of the necessary jurisdictional facts. *Bryan* v. *Walton,* 14 *Ga.* 185 (11); *Tant* v. *Wigfall,* and *Maybin* v. *Knighton,* supra; *Medlin* v. *Downing Lumber Co.,* 128 *Ga.* 115 (57 S. E. 232); *Alabama Great Southern R. Co.* v. *Hill,* 139 *Ga.* 224 (3) (76 S. E. 1001, 43 L. R. A. (N. S.) 236, Ann. Cas. 1914D, 996); *Wash* v. *Dickson,* 147 *Ga.* 540 (94 S. E. 1009); *Copelan* v. *Kimbrough,* 149 *Ga.* 683 (102 S. E. 162). This also accords with the statement in the treatise by Woerner on the American Law of Administration (3d ed.), vol. 1, 488, § 145. In discussing the nature of probate courts in America, and the conclusiveness of their judgments in collateral proceedings, the author says: "On principle there seems to be no difficulty attending the question, except, perhaps, to ascertain whether the tribunal intrusted with jurisdiction in probate matters is *a court,* with *judicial functions* in the common-law sense, or whether its functions are *ministerial only,* or having no authority beyond special powers for the performance of specific duties not relating to the general administration of justice. If the latter be the case, it is obvious that, to give validity to its acts, it must affirmatively appear that everything necessary to such act has been

observed. But if it be found that the tribunal is one competent *to decide* whether the facts in any given matter confer jurisdiction, it follows with inexorable necessity that if it decides that it has jurisdiction, then its judgments within the scope of the subject-matters over which its authority extends, in proceedings following the lawful allegation of circumstances requiring the exercise of its powers, are conclusive against all the world, unless reversed on appeal, or avoided for error or fraud in a direct proceeding. It matters not how erroneous the judgment; being *a judgment,* it is *the law* of that case, pronounced by a tribunal created for that purpose. To allow such judgment to be questioned or ignored collaterally would be to ignore practically, and logically to destroy, the court. And it is not necessary that the facts and circumstances upon which the jurisdiction depends shall appear upon the face of their proceedings, because, being competent to decide, and having decided, that such facts exist by assuming the jurisdiction, this matter is *adjudicated,* and can not be collaterally questioned." See also Kladivo's Estate, 188 Iowa, 471 (176 N. W. 262) ; Yeaton *v.* Barnhart, 78 Or. 249 (150 Pac. 742) ; Lethbridge *v.* Lauder, 13 Wyo. 9 (76 Pac. 682) ; Wyatt *v.* Steele, 26 Ala. 639, 650; Morford *v.* Diffenbacker, 54 Mich. 593, 605 (20 N. W. 600). We are satisfied with the soundness of the conclusion reached by the majority of the court in *Smith* v. *Scarborough,* supra, as announced in the first syllabus, to wit: "Want of jurisdiction in the court of ordinary to grant letters of administration in a particular case is not shown by allegations that at the time of the grant of administration a will was on file in the office of the ordinary, which had been previously propounded, but, no caveat having been interposed, probate was refused on account of failure of the propounder to produce evidence that was accessible to establish the will, and that the will was subsequently probated. Such facts may be considered in the exercise of jurisdiction, but they are not jurisdictional facts." It is a plain truism to say that the judgment of a court of competent jurisdiction is not void, even if it is erroneously rendered in the exercise of its jurisdiction, and consequently would not be subject to collateral attack.

█ The plaintiffs in error invoke the doctrine of lis pendens, and insist that the purchaser at the administrators' sale took with notice of the pendency of the application to probate the will which

was of file, and therefore took subject to any judgment that might thereafter be rendered on that application. Whether or not it is true that the order of the ordinary denying probate for lack of evidence amounted to res judicata upon the question of intestacy (*Scarborough* v. *Edgar,* supra), and that the application to probate had not been finally determined, but remained in court, subject to further action (according to the view expressed by Mr. Justice Bell in his dissenting opinion in *Smith* v. *Scarborough,* supra), it is not shown that the purchaser at the administrators' sale had any actual notice of the existence of a will, or of an application on file to probate a will, and we do not think that under the doctrine of lis pendens the purchaser took subject to the outcome of the pending application to probate, and hence that the purchaser's claim of title to the lands should fail in competition with the claim of the devisees. It turns out in this particular case that the will, some twelve years after its filing, was actually probated on the original application therefor, and that the plaintiffs were devised substantial properties, which, under our ruling affirming the judgment of the court below, they are to lose. But we should not let hard cases make bad law. Let us suppose a case where an estate has many creditors. Their only recourse is to have sold the property which the deceased left, and the proceeds applied to the payment of their claims. Let it further be supposed that some one filed with the ordinary a purported will, and an application to probate it, which application was denied for lack of evidence as to its execution, and the ordinary in the meantime, on the application of a party at interest who represented that the decedent departed this life intestate, appointed in due course an administrator, who, after regularly obtaining leave, undertook to sell the lands for the purpose of paying debts. The lands would bring hardly anything if it were known that it might afterwards be held that such a purchaser would get no title in the event that within a reasonable time in the future the pending application might be renewed and witnesses brought forward to prove the will. If it be that the ordinary has jurisdiction to appoint an administrator only if it should turn out that the instrument refused probate for lack of evidence was never admitted to record, it would be within the power of any one, by filing a written instrument which, though not a will, yet purported to be one, accompanied by an application to probate it,

to delay an administration, and therefore work injury to creditors, heirs at law, and others. We say "delay," instead of "prevent," because under no view of the matter could one claim the benefit of lis pendens unless the pending suit be duly prosecuted. Code, § 37-117.

Aside from these practical considerations, there are, in our opinion, other reasons why plaintiffs in error are not aided by the law of lis pendens. In *Bridger* v. *Exchange Bank*, 126 *Ga.* 821, 826 (56 S. E. 97, 8 L. R. A. (N. S.) 463, 115 Am. St. R. 118), it was said that two theories have been advanced as the basis of the doctrine of lis pendens; one, that it is referable to the doctrine of constructive notice; the other, that the doctrine of lis pendens is not founded on any principle with regard to notice, but on the ground that it is necessary to the administration of justice that the decision of the court in a suit shall be binding, not only on the litigant parties, but on those who derive title from them pendente lite, whether with notice of the suit or not. It was further said that "The latter theory appears to have been adopted by most of the recent decisions. 2 Pom. Eq. Jur. § 632, and notes." In Bennett on Lis Pendens, 78, it is stated that "The foundation for the doctrine of lis pendens does not rest upon notice, actual or constructive; it rests solely on necessity, that neither party to the litigation should alienate the property in dispute so as to affect his opponent." In *Moody* v. *Millen*, 103 *Ga.* 452, 454 (30 S. E. 258), it was said: "To the existence of a valid and effective lis pendens it is essential that three elements be present; that is, three material facts must concur: the property must be of a character to be subject to the rule; the court must have jurisdiction both of the person and the subject-matter; and the property involved must be sufficiently described in the pleadings. Where any one of these essentials is wanting, there is no valid lis pendens, no res litigiosa. 13 Am. & Eng. Enc. L. 877, and authorities cited. The litigation must be about some specific thing which must necessarily be affected by the termination of the suit, and the description of the particular property involved in the suit must be so definite that any one reading it can learn thereby what property is intended to be made the subject of litigation. Houston *v.* Timmerman, 17 Or. 499 (21 Pac. 1037, 11 Am. St. R. 848, 4 L. R. A. 716). The underlying if not the sole subject of the maxim, pendente lite

nihil innovetur, is to keep the subject of the suit or res within the power of the court until the judgment or decree shall be entered, and thus to make it possible for courts of justice to give effect to their judgments and decrees." In *Coleman* v. *Law,* 170 *Ga.* 906 (154 S. E. 445, 74 A. L. R. 684), it was said that "Lis pendens is the jurisdiction, power, or control which courts acquire over property involved in a suit, pending the continuance of the action, and until final judgment therein."

The application to probate the will was a proceeding in rem. Re Brown's will, 194 N. C. 583 (140 S. E. 192); Hutson *v.* Sawyer, 104 N. C. 1 (10 S. E. 85); Re Young's will, 123 N. C. 358 (31 S. E. 626). The res was the written instrument, the will. There are no parties, strictly speaking. Collins *v.* Collins, 125 N. C. 98 (34 S. E. 195); St. John's Lodge *v.* Callender, 26 N. C. 335; Re Beale's will, 202 N. C. 618 (163 S. E. 684). It involved real estate, indirectly but not directly. The proceeding did not constitute an action upon which a valid lis pendens might arise. In *Cook* v. *Hendricks,* 146 *Ga.* 63 (90 S. E. 383), it was held that an application to set aside a homestead is not a suit so as to be affected by lis pendens. What was said in that case on that subject is applicable here : " Counsel for the plaintiffs in error insist, that, under the doctrine of lis pendens, 'the proceedings for homestead set out in the record constitute notice to all the world from the time the petition is filed; and if the same is duly prosecuted, one who purchases pending the suit is affected by the decree rendered therein.' The vice of this contention lies in the fact that the application to set apart the homestead is not a suit. A suit at law is a remedy to enforce a right to recover for a violation of a contract, or for an injury done. Civil Code (1910), § 3652. The term 'lis pendens' . . has application to pending suits, and is then only general notice of an equity or a claim, if the same is duly prosecuted. . . It is necessary to have a correct understanding of the meaning of the term 'lis pendens,' and of its object, in order to make a correct application of the rule. The courts as well as the legal profession have often employed the term in a way tending to mislead and confuse. 'Lis means an action, a suit, a cause, a controversy. Pendens is the present participle of pendo, meaning continuing or pending.' Bennett on Lis Pendens, § 2. Lis pendens, therefore, means a pending suit." We do not think that the application to

420

probate a will is a pending suit within the meaning of the law of lis pendens. See also Morangne *v.* Doe, 143 Ala. 459 (39 So. 161, 111 Am. St. R. 52, 5 Ann. Cas. 331).

■ It follows that, irrespective of the other questions raised, it was not erroneous to sustain the defendants' demurrer. The case is therefore remanded to the superior court of Fulton County with direction that the suit be dismissed with costs against the plaintiffs.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Bell, J., who dissent.*