838 F.2d 803
 Jerry WITHERSPOON, Individually, and as the mother and next
friend on behalf of Eric Gerald Gaines, Irish Yvette Gaines,
Corey Ann Gaines, Michael George Gaines, Nanyamka Akwete
Kambui, Mawusi Akwokwo Kambui, and Kamu Sababu Kambui,
Minors, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 87-4104.
 United States Court of Appeals,
Fifth Circuit.
 March 4, 1988.
 
 Carroll Rhodes, Hazlehurst, Miss., for plaintiffs-appellants.
 R. Joseph Sher, Atty., Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., George Phillips, U.S. Atty., Daniel E. Lynn, Asst. U.S. Atty., Jackson, Miss., for defendant-appellee.
 Appeals from the United States District Court for the Southern District of Mississippi.
 Before THORNBERRY, GEE and POLITZ, Circuit Judges.
 GEE, Circuit Judge:
 
 
 1
 In the fall of 1981, the Federal Bureau of Investigation had been seeking the perpetrators of the infamous Brinks robbery and murders. Seven days after it took place, two of the suspected terrorists had been sighted at appellant Witherspoon's rural residence in Copiah County, Mississippi; and the authorities made preparations to apprehend them. As Judge Davis noted, in an unpublished opinion disposing of the earlier appeal in this case:
 
 
 2
 Arrest warrants had been issued for the two suspects, and a local magistrate signed warrants authorizing the search of the farmhouse, other buildings and vehicles for the suspects, for weapons, and for other evidence relating to the terrorist group involved in the robbery-murder. The affidavits supporting these warrants show that there was probable cause to believe that the farmhouse was a terrorist safehouse in which the fugitives were hiding. One of the two suspects was arrested at the farmhouse the morning the warrants were executed. The photographs and inventories attached to the executed search warrants indicated that rifles, machine guns, ammunition and other evidence were recovered from the farmhouse and the vehicles. The defendants' affidavits further indicated that at the time of the arrests and searches, the minor children had been removed from the scene for their own safety. They were taken to the local detention center, along with their mother, for about an hour and a half.
 
 Background
 
 3
 A relatively minor consequence of these lively doings was this action at law, brought by Witherspoon on her own behalf and that of her eight minor children, on Sec. 1983 and Bivens grounds against the arresting state and federal agents--one and all, and in their individual and official capacities. The "official capacity" claims were dismissed on sovereign immunity grounds, Witherspoon having omitted to comply with the administrative claim requirement of the Federal Tort Claims Act. Summary judgment on alternate grounds of the merits and qualified immunity followed on the individual capacity claims. We affirmed, in an unpublished opinion. Witherspoon v. Cordier, 727 F.2d 1106 (1984), cert. denied, 469 U.S. 1017, 105 S.Ct. 430, 83 L.Ed.2d 357 (1984).
 
 
 4
 Nothing daunted, Witherspoon, having by then exhausted her administrative remedies against the United States, brought this attempted action against her country on various grounds, including state law claims. The trial court dismissed on the government's plea of res judicata, and we affirm on a more modest ground.
 
 Preclusion of Re-Litigation
 Collateral Estoppel
 
 5
 The claims of the plaintiffs in the present action are essentially identical to those advanced in the earlier one and decided against them. Each of the six counts in the present complaint rests upon factual assertions that have already been found to have been false in the earlier district court disposition, affirmed by us.[1]
 
 
 6
 As an example, paragraphs 23 through 25 of the earlier complaint assert that the plaintiffs were called out of Witherspoon's residence by armed officers and
 
 
 7
 once outside, plaintiffs were searched at gunpoint without a valid search warrant and without probable cause. Plaintiffs were then arrested and transported to the Copiah County Detention Center in Gallman, Mississippi, where they were forced to submit to a strip body and cavity search without valid search warrants or without probable cause. Defendants Robert Cordier, Richard Keith Bell, and approximately two hundred unknown agents and officers of the FBI, the Copiah County Sheriff's Department and other law enforcement agencies of the State of Mississippi and other states of the United States, made such searches without valid search warrants or other legal process, and without probable cause. (Paragraph numbers deleted, emphasis added).
 
 
 8
 The complaint in today's case makes identical factual assertions. Each count avers that the arresting officers' actions were taken "without warrants, probable cause, or other legal process." Count III is illustrative:
 
 
 9
 The actions of the defendants in arresting plaintiffs, without warrants, probable cause, or other legal process, and in subjecting plaintiffs to a strip and body cavity search without warrants, probable cause, or other legal process constituted a battery and violated rights secured to plaintiffs by the Constitution and laws of the United States and the Constitution and laws of the State of Mississippi.
 
 
 10
 (Emphasis added).
 
 
 11
 These assertions enjoy no association whatever with fact, are blatantly false, and have been found to be so. As the district court determined in the first proceeding, no issue of fact was made and
 
 
 12
 [t]he evidence of record establishes that this Court issued four search warrants for the plaintiffs' farmhouse and vehicles located on the farmhouse property. The warrants are public Court records, of which the Court takes judicial notice. Fed.R.Evid. 201. The warrants are proper in form and are supported by sufficient evidence to establish probable cause to search the plaintiffs' farmhouse for the persons and items specifically named in the warrants. No competent evidence to the contrary appears in the record. The search of the plaintiffs' farmhouse was a part of the FBI's investigation to arrest persons and seize items involved in the New York Brinks robbery and murders that had occurred seven days before. One of the fugitives and many items listed in the warrants, including numerous weapons and a great quantity of ammunition, were seized in the farmhouse.
 
 
 13
 We affirmed, noting:Viewed in the light most favorable to Witherspoon, there is no genuine issue of fact that the defendants had warrants to search the farmhouse for fugitives, weapons and terrorist paraphernalia, and that these warrants were supported by probable cause.... The defendants' frisking of the farmhouse occupants, search of the farmhouse and vehicles and seizure of property therefrom were all authorized by the warrants and supported by probable cause. These actions did not violate the plaintiffs' constitutional rights.
 
 
 14
 Nor did the defendants' warrantless arrest of Witherspoon violate her constitutional rights, because it was supported by probable cause....
 
 
 15
 There is no dispute that at the time the officers arrested Witherspoon they were aware that she was hiding one or more federal fugitives, who were suspected of having recently committed robbery and murder, and that her farmhouse was a terrorist "safehouse" used to train and secrete terrorists. These facts were sufficient to justify the reasonable belief that Witherspoon had violated 18 U.S.C. Sec. 3 (accessory after the fact) or 18 U.S.C. Sec. 4 (misprison of felony). Witherspoon was not arrested without probable cause.
 
 
 16
 Once Witherspoon was arrested, it was constitutionally permissible for the defendants to subject her to a strip search. (Footnotes deleted).
 
 
 17
 The United States invokes, as an alternative basis for affirmance, the doctrine of collateral estoppel. Because the government urged collateral estoppel below, we may affirm on that ground even if it was not relied upon by the district court.[2] To apply collateral estoppel, we need not find identity of the parties in the two suits. Rather, collateral estoppel bars the plaintiffs from relitigating against the United States, or against any other defendant, issues that were actually decided in the earlier action brought against the law enforcement officers.[3]
 
 
 18
 As we have demonstrated at some length above, we affirmed the district court's finding that plaintiffs were not deprived of their constitutional rights by the searches, seizures and arrests made by the law enforcement officers. Consequently, they may not relitigate the constitutionality of the officers' actions.
 
 
 19
 It is, of course, conceivable that the plaintiffs might have asserted in this action state law claims that, although not violations of the Constitution, constituted torts under Mississippi's law. State law may render conduct tortious that does not violate the federal constitution;[4] and a finding that none of plaintiffs' constitutional rights were violated by the searches, seizures and arrests does not automatically imply that no torts were committed against them.
 
 
 20
 Plaintiffs, however, asserted no such claims in today's case. As we have noted above, with one possible exception to be discussed, every claim of tort asserted today by plaintiffs under any law whatever rests on a factual predicate that we have already determined to be false: that the officers arrested the plaintiffs "without warrants, probable cause, or other legal process."[5] Like the Angel at the gate of the Garden, this determination bars further litigation of any claim which depends upon a want of warrant or probable cause.
 
 
 21
 Each of these does, and all are barred.
 
 
 22
 "Arrest" of the Minor Children
 
 
 23
 At the time of the descent on Witherspoon's terrorist safehouse, her eight minor children ranged in age from 13 years to ten months, three being infants. There were, of course, no warrants of arrest for these children, nor probable cause to believe that any had committed a crime. By lumping the children together with Witherspoon as "plaintiffs," the current pleading asserts that they, too, were frisked, handcuffed, arrested, strip-searched and the like and seeks damages for those police actions. And, as we have noted, unlike the case of Witherspoon herself, as to the children it is true that neither warrants nor probable cause were present.
 
 
 24
 It is also true, however, that having properly apprehended their mother the agents had no choice available to them except to remove these minors from danger and care for them until they could be restored to her care and custody--such as it was. At least one court has held that due process is violated when minor children are left unattended, in a dangerous situation, by police who have arrested the adult who was supervising them. White v. Rochford, 592 F.2d 381 (7th Cir.1979). We need not go so far as this to say, as we do, that unless it is to be the law that one engaged in supervising a minor is, while doing so, immune from an arrest otherwise called for, then the temporary care of the minor by the arresting officers is a mere unavoidable consequence of the lawful arrest and, in and of itself, can give rise to no claim against them as a matter of law. Unreasonable or injurious treatment of the child would be quite another matter, but--as we long ago held in this very case--nothing of the kind occurred.
 
 
 25
 Indeed, as the trial court noted, the undisputed evidence established the contrary:
 
 
 26
 The record reveals that the defendants acted properly and reasonably in quickly removing the occupants of the farmhouse, largely children, from the zone of danger around the farmhouse while the agents seized one fugitive and secured the farmhouse for the search. See White v. Rochford, 592 F.2d 381 (7th Cir.1979). The defendants transported the plaintiffs to a local law enforcement facility being used as an operations center which was a place of safety and returned them to the farmhouse area when the dangerous conditions there had subsided. None of the plaintiffs were harmed in any manner. No competent evidence reveals that any of the plaintiffs were charged with any violations of law, even though law enforcement officers reasonably could have formally charged Jerry Witherspoon. See Trejo v. Perez, 693 F.2d 482 [5th Cir.1982].
 
 
 27
 The detention was minimal, brief and entirely reasonable and proper in light of the dangerous conditions then and there existing. No evidence raises an issue that the defendants acted unreasonably or imprudently in any of their actions regarding the plaintiffs.
 
 
 28
 We agreed, affirming the decision of the trial judge:
 
 
 29
 The defendants' "arrest" of Witherspoon's eight minor children was also constitutional. After the occupants of the farmhouse came out into the yard, the three adults were arrested. The children were transported to the detention center so they would have care and supervision. The children remained at the detention center, along with their mother, for less than two hours. This arrest did not violate their constitutional rights. Indeed, to have left the children unattended when their guardians were arrested might have been a violation of the children's constitutional rights. White v. Rochford, 592 F.2d 381, 383 (7th Cir.1979). The plaintiffs have failed to raise a genuine issue of material fact that the children's rights were violated by their protective detention.
 
 Conclusion
 
 30
 It is past time that this baseless lawsuit end. It has already once been decided against the claims made on this appeal, and any attempt to pursue it further should incur the sanctions that--had the United States sought them--we might well have imposed today. By harboring dangerous fugitives, Witherspoon placed herself and her children, three of them mere babies, at serious risk. Incredibly, in our view, she has sought by this lawsuit to profit by her own misconduct, not sparing even the estate of a deceased officer. The judgment of the district court isAFFIRMED.[6]
 
 
 
 [1]
 Because neither of the earlier opinions was published, we are obliged to quote from each at some length
 
 
 [2]
 Watts v. Graves, 720 F.2d 1416, 1420 (5th Cir.1983)
 
 
 [3]
 Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979)
 
 
 [4]
 Baker v. McCollan, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695-96, 61 L.Ed.2d 433 (1979)
 
 
 [5]
 In a variation on this theme, paragraph 20 alleges that the officers were negligent in "failing to make sure that [they] had valid arrest warrants, probable cause, etc., etc."
 
 
 [6]
 We affirm on another and narrower ground--collateral estoppel--than that proceeded upon by the trial court. By so doing, we imply neither approval nor disapproval of his determination of claim preclusion; we simply proceed on the narrowest valid ground