631 So.2d 1223 (1994)
STATE of Louisiana
v.
Karen COPELAND.
No. 93-KA-544.
Court of Appeal of Louisiana, Fifth Circuit.
January 25, 1994.
*1224 Philip E. O'Neill, Gretna, for defendant/appellant Karen Copeland.
John M. Mamoulides, Dist. Atty., John Molaison, Dorothy A. Pendergast, Asst. Dist. Attys., Gretna, for appellee State of La.
Before BOWES, CANNELLA, JJ., and JOHN C. BOUTALL, J. Pro Tem.
CANNELLA, Judge.
Defendant, Karen M. Copeland, appeals from her conviction of second degree murder (La.R.S. 14:30.1) and sentence to life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. For the reasons which follow, we find no error in the lower court proceedings and affirm the conviction and sentence.
On October 20, 1990 residents of apartment 101 of the Sunwood One Apartments in Metairie, Louisiana, reported that they heard gunshots. The assistant manager then contacted Deputy Vincent Bosco of the Jefferson Parish Sheriff's Office to advise him of the reported gunshots. Deputy Bosco resided in and provided security for the complex. Dressed in shorts and a T-shirt but armed with his revolver and radio, he proceeded to apartment 101 to investigate. The occupants of apartment 101 informed him that they had heard gunshots which they believed came from the apartment directly above them, apartment 201. Deputy Bosco radioed for backup, proceeded upstairs to apartment 201 and knocked on the door. After waiting for a few minutes with no answer, he began to walk away. Thereupon the door opened and defendant exited the apartment crying. He informed defendant that he had received complaints of gunshots and asked her if everything was alright. She responded that "she had just shot and killed her friend, Tanya, and that Tanya was laying on the sofa dead." Deputy Bosco entered the apartment and proceeded down a hallway to the rear room where he found a female lying on the "sofa-bed combination." He checked for a pulse but felt none. He observed a two year old child playing in the room, apparently unaware of the homicide. He observed a rifle on the counter that separated that rear room from the kitchen. He picked up the rifle to prevent any danger to the child and left the apartment with defendant and the rifle. For one or two minutes Deputy Bosco remained outside of the apartment, preventing any ingress or egress, until the backup officers arrived. The backup officers entered the apartment and "processed the scene," collecting evidence, including seven spent casings. Defendant was later transported to *1225 the Sheriff's Office where she gave a statement to Detective English, confessing the killing of Tanya Glapion. An autopsy revealed that the victim suffered seven gunshot wounds.
Defendant was indicted on November 8, 1990 for second degree murder, a violation of La.R.S. 14:30.1. She entered a plea of not guilty and the case proceeded to trial on January 14, 1992. At the conclusion of a four day trial, the jury found defendant guilty as charged. On February 14, 1992, the trial court sentenced defendant to life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence, with credit for time served. Defendant appealed.
Defendant assigns four errors on appeal. First, defendant argues that the trial court erred in denying her objection and motion for a mistrial when the district attorney, in his rebuttal argument to the jury, made prejudicial, disparaging personal remarks about defense counsel which directly influenced the jury in reaching its verdict. La.C.Cr.P. art. 774. Therefore, defendant argues that the verdict should be set aside.
The state does not dispute that the remark was improper for rebuttal argument, but argues that it does not constitute reversible error and was properly handled by the trial court admonition. We agree.
During rebuttal argument by the district attorney, the following remark was made:
There are two words that Mr. O'Neill used repeatedly throughout his closing argument, one's deception and aboutthere's only one thing that I agree with that he sayswhen it comes to the word "deception", he's the king of it. And he's trying to pull the wool over your eyes.
Defense counsel objected to the remarks. Argument ensued outside of the jury's presence and the court ruled that it was not going to declare a mistrial but would admonish the jury. Defense counsel noted his objection. When the jury returned, the court instructed them:
Ladies and gentlemen, the purpose of the closing argument is simply to go over the facts with you and suggest what those facts have been proven (sic) or what they believe that they've proven and if proven, what reasonable conclusions you can reach from those. It is not a discussion as to the methodologies of either attorney in this particular case.
Confine your arguments solely to the facts presented in this case, Mr. Molaison.
La.C.Cr.P. art. 774 provides:
The argument shall be confined to evidence admitted, to lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
The official revision comment to this article states that no sanctions are provided in the article for violation. Argument beyond the scope of the article falls within the ambit of La.C.Cr.P. arts. 770 and 771. Those articles cover prejudicial remarks and when mistrial or admonition is necessary. La.C.Cr.P. art. 770 provides:
Upon motion of the defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish *1226 the jury to disregard the remark or comment but shall not declare a mistrial.
La.C.Cr.P. art. 771, pertaining to when an admonition is appropriate, provides:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
It is clear that the comment made by the district attorney was improper under La. C.Cr.P. art. 774. However, it is equally clear that it was only of such magnitude as to fall within La.C.Cr.P. art. 771, requiring an admonition, and not within La.C.Cr.P. art. 770, requiring a mistrial. The court promptly admonished the jury, as required by law. The court was of the view that the admonition was sufficient, in view of the nature of the comment, to insure defendant a fair trial. We find no error in that ruling. Accordingly, we hold that this assignment of error has no merit.
Next, defendant argues that the trial court erred in admitting into evidence a toe-tag photograph of the deceased and autopsy protocol drawings. Defendant contends that because she admitted the killing and the coroner testified concerning the nature of the wounds, the photograph and drawings served no purpose but to inflame the jury. Therefore, defendant argues that admission of this inflammatory material warrants reversal.
Photographs which illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place or thing depicted are generally admissible. State v. Kirkpatrick, 443 So.2d 546 (La.1983), cert. denied, 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 847 (1984). In addition, diagrams are generally admissible to aid the jury if shown to be accurate representations of the subject matter in question, and the ruling of the trial court relative to admissibility will not be disturbed on appeal unless there has been an abuse of discretion. State v. Prestridge, 399 So.2d 564 (La.1981).
The trial court overruled defendant's objections to the toe-tag photograph and the protocol drawings, finding that they had probative value. The trial judge did not abuse his discretion in so doing. The photograph corroborated the identity of the victim and the diagram assisted the jury in visualizing the wounds suffered by the victim. There is no showing that the materials were gruesome or prejudicial in any way. This assignment of error lacks merit.
Defendant contends that her conviction should be vacated because the trial court erred in denying her motion to suppress evidence. Defendant does not take issue with Detective Bosco's seizure of the rifle, but rather contends that the items seized by the backup officers were illegally seized without a warrant.[1] Defendant relies on Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) in support of his argument. Therein the Court held that there was not a blanket "death-scene" exception to the warrant requirement. Therefore, defendant contends that the search of the apartment and seizure of evidence, by the backup officers, violated her Fourth Amendment rights. We disagree.
First, Mincey is distinguishable from the case before us. In Mincey the backup officers arrived on the scene about ten minutes *1227 after the homicide and initial inspection of the residence where the homicide occurred. After arrest of the defendant, the officers conducted a four day exhaustive search of the residence, including opening drawers and removal of carpet for samples. Between 200 to 300 pieces of evidence were seized during this four day search. In the instant case, the backup officers arrived on the scene approximately two minutes after Detective Bosco had exited the apartment. At that time, the defendant was lying face down outside of the apartment. Detective Bosco had checked the victim for a pulse and found none but it was reasonable for the officers to enter the apartment to either ascertain the need for medical assistance or confirm the death. Furthermore, in this case, there was a two year old child unattended in the apartment for whom immediate assistance was necessary. Upon entering the apartment to check the victim and aide the child, the officers seized the spent casings and live rounds which were in plain view.
Mincey recognized that there were emergency situations in which a warrant would not be required. The Court stated:
We do not question the right of police to respond to emergency situations. Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. Similarly, when the police come upon the scene of a homicide they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises. "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." And the police may seize any evidence that is in plain view during the course of their legitimate emergency activities. (citations omitted.)
The facts of this case give rise to the very emergency situation contemplated in Mincey. The re-entry into the apartment was within minutes of the first entry. The defendant was still on the scene. The need for medical assistance had to be determined and the unattended child had to be provided for. The items admitted at trial, which were seized during this entry, were in plain view. There was no lengthy and exhaustive search of the premises as that which occurred in Mincey. Accordingly, we find that the trial court did not err in denying the motion to suppress.
Finally, defendant argues that under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) the facts of this case that were adduced at trial, do not support the verdict reached, guilty of second degree murder. Rather, she contends that the record only supports a conviction for manslaughter.
Manslaughter is a homicide which would be either first or second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled or that an average person's blood would have cooled, at the time the offense was committed. La.R.S. 14:31(1). Thus the presence of "sudden passion" or "heat of blood" distinguishes manslaughter from murder.
"Sudden passion" and "heat of blood" are not elements of the offense of manslaughter. Rather, they are mitigatory factors in the nature of a defense which exhibit a degree of culpability less than that present when the homicide is committed without them. State v. Lombard, 486 So.2d 106 (La.1986). When the preponderance of the evidence shows that a homicide was committed in "sudden passion" which would have deprived an average person of his self control and cool reflection, a jury errs in rendering a verdict of second degree murder. State ex rel Lawrence v. Smith, 571 So.2d 133 (La. 1990). Thus, in reviewing defendant's claim, that the evidence supports a manslaughter verdict, this court must determine whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigatory factors *1228 were not established by a preponderance of the evidence. State v. Lombard, supra.
Defendant gave a detailed confession which was admitted at trial. She also took the stand and confirmed its accuracy. The confession coupled with the testimony resolve any doubt that there was sufficient evidence to support the second degree murder verdict.
Defendant asserted that she and the victim had been living together for about five months in an intimate homosexual relationship. On Wednesday, October 17, 1990 there was apparently some disagreement and the defendant went out alone for the evening. Thereafter the victim allegedly made comments concerning her desire to date other people. They had a heated argument Friday night, October 19, 1990, with, perhaps, some pushing and wrestling. The following morning, defendant testified that the victim would not speak to her. However, the victim did ask defendant what she wanted for breakfast and prepared it and served her in her room. The victim watched cartoons with her son for some time and then went into the bathroom to take a shower. Defendant approached the bathroom door, knocked and entered to inquire about the victim's behavior the previous night. The victim essentially replied that she could do whatever she wanted and pushed defendant out and slammed the door. The victim then came out of the bathroom and went to the closet, where the arguing continued. The victim told defendant that as of Wednesday they had an open relationship. Defendant responded that she did not want an open relationship and that either the relationship was to be exclusive or not at all. The arguing continued and defendant stated that the victim told her that she (defendant) made her so mad that she should kill defendant. Then the victim went back into the bathroom and shut the door. Defendant went to the same closet and retrieved a rifle. She then went into her own bedroom closet, got the bullets and loaded the rifle. By this time, the victim had come out of the bathroom again and was searching in her closet again. Defendant, brandishing the rifle, came down the hall behind the victim. Defendant testified that the victim again told defendant that she was going to kill her. As the victim turned, defendant fired about three times. The victim then headed toward the bed. From over five feet away, defendant testified that the victim started coming toward her, so she shot her again. The victim then fell on the bed, face up. The defendant placed the rifle on the counter and walked over to look at the victim. Defendant stated that she knew the victim was dying and that "it hurt" so she went back to the counter, picked up the rifle, walked over to the victim and pressed the muzzle against the victim's chest, right below her breast, and fired the rifle again.
Defendant admitted at trial that she did not see anything in the victim's hands before firing the first shots. She stated that she did not see anything in her hands before firing the second time. However, she stated that she wasn't looking at her hands. No other weapon was found in the apartment. Defendant admitted that she killed the victim because she rejected her.
In reaching its verdict, the jury apparently found that the defendant did not act in "sudden passion" or "heat of blood." In viewing the evidence in the light most favorable to the prosecution, we find that the trier of fact could have found that the mitigatory factors were not established by a preponderance of the evidence. Therefore, we find this assignment of error lacks merit.
An error patent review was conducted and reveals that the sentencing form, unlike the sentencing transcript, fails to reflect that the defendant was given credit for time served. Therefore, we order that the sentencing form be appropriately amended to conform to the transcript. See. State v. Lynch, 441 So.2d 732 (La.1983).
Accordingly, for the reasons stated above, we affirm defendant's conviction for second degree murder and her sentence to life imprisonment, without benefit of parole, probation or suspension of sentence, with credit for time served. Also, we order that the sentencing form reflect that defendant was given credit for time served.
AFFIRMED.
NOTES
[1] The items seized from the apartment consisted of the rifle, seven spent casings, three live rounds and blood samples. Of these items, only the rifle, casings and live rounds were admitted into evidence at trial.