## S00A1512. THE STATE v. PETERSON et al.
### (543 SE2d 692)

BENHAM, Chief Justice.

This appeal is from the trial court's grant of a motion to suppress evidence in a murder prosecution. See OCGA § 5-7-1 (a) (4). Testimony at the hearing on the motion to suppress outlined the following events. On January 15, 1998, shortly after 10:00 p.m., Terri Lynn Peterson made an emergency call to 911 because her five-year-old nephew, Terrell Peterson, was not breathing. The child was taken by emergency personnel to a local hospital where he was pronounced dead. Detective Griffie of the Atlanta Police Department, who was assigned to the case, arrived at the hospital shortly after midnight. There he observed the dead child's body with numerous bruises, abrasions and cuts covering his head, face, torso and extremities. After consulting with medical personnel, Detective Griffie formed the opinion that the child had been the victim of severe abuse, neglect, strangulation, and starvation. Detective Griffie spoke with Terri Lynn Peterson and learned that two small children, ages six and eleven, were still present at the Peterson home with Terri Lynn Peterson's boyfriend, Calvin Pittman. When he arrived at the Peterson home, the detective was admitted into the home by two uniformed police officers who told him that Pittman had been taken from the home to police headquarters for questioning and that they were caring for the two minor children who were without adult supervision. Being concerned for the safety of the two minor children who were in a bedroom on the second floor of the Peterson home, Detective Griffie immediately initiated efforts to contact relatives to take care of the children. He did so by climbing the stairs to the second floor of the home to ask the children the identity of their nearest relatives. At the top of the stairs, he noticed a pair of pantyhose on the banister in front of the bedroom and several notes attached to the door of the bedroom in which the children were sleeping.[1] When he

---

[1] One of the notes was entitled "Terrell's List Bad" and stated:
Make sure he gets a bowl of oatmeal for breakfast.
Lunch he gets grits and dinner he gets grits.
*His hands are always tied.*
He can't go to the bathroom by himself.
He can't go in my room
Tasha's or Tommy's [the six- and eleven-year-old children who lived in the home]

entered the bedroom, one of the children was suffering an asthma attack and Detective Griffie, with the assistance of the other child, helped the stricken child obtain access to a breathing machine in an adjoining bedroom. Through the open door of another bedroom, Detective Griffie saw a belt and a piece of telephone cord that could have been used to cause the injuries he had observed on the victim in the hospital emergency room. The children told Detective Griffie that the pantyhose were used to tie the victim to the bannister.

After meeting with no success in locating relatives of the two minor children, Detective Griffie arranged for court-ordered placement of the children in a shelter. Detective Griffie had a police photographer come to the Peterson home and take pictures of the pantyhose, the rope, the belt, and the notes affixed to the door of the children's bedroom, then seized the articles.

The grand jury indicted Terri Lynn Peterson, Calvin Pittman, and Pharina Peterson, the victim's grandmother, for malice murder, three counts of felony murder, aggravated assault, aggravated battery, and three counts of cruelty to a child. The defendants moved for suppression of the items seized by Detective Griffie and the photographs made at his direction. The trial court granted the motion, finding that Detective Griffie was not authorized to seize the items without a warrant under the "plain view doctrine" because no exigent circumstances required his presence in the apartment.

The "plain view doctrine," which must be considered on a case-by-case basis (*United States v. Anderson*, 154 F3d 1225, 1233 (10th Cir. 1998)), permits the warrantless seizure of evidence visible to a police officer who sees it from a vantage point the officer is legally entitled to occupy. *State v. McTaggart*, 241 Ga. App. 852 (528 SE2d 309) (2000). See also *State v. David*, 269 Ga. 533 (2) (501 SE2d 494) (1998). There is no question that the evidence at issue was in Detective Griffie's plain view. Whether Detective Griffie was authorized to be where he was when he saw the evidence is the key to this appeal. Applying a common sense approach to the matter, we conclude that there are two reasons why Detective Griffie was authorized to enter the home without a warrant, and that the trial court erred in concluding otherwise.[2]

1. In its order granting the motion to suppress, the trial court

*Definitely not Terries'*
Make sure he gets plenty of water he sleeps in hall.
(Emphasis in original.)

[2] The resolution of the issues on this appeal, as well as the trial court's decision on these matters, was made unreasonably difficult by the State's inexplicable failure to call as witnesses any of the uniformed officers by whom, in the trial court's words, "the dwelling was being secured. . . ." However, resolution of the issues is possible by careful and reasonable consideration of the trial court's order and Detective Griffie's testimony.

relied on the presence of uniformed officers to hold that no exigent circumstances existed to authorize Detective Griffie's entry. Necessarily implicit in that ruling, and crucial to its rationale, is the legality of the uniformed officers' presence in the home to secure it and to protect the children. That being so, Detective Griffie's entry for the purpose of seeing that the children who had been left without responsible adult supervision were cared for properly was not a violation of the residents' Fourth Amendment rights.

> [A]dditional investigators or officials may . . . enter a citizen's property after one official has already intruded legally. [Cits.] Later arrivals may join their colleagues even though the exigent circumstances justifying the initial entry no longer exist. [Cit.]

*United States v. Brand,* 556 F2d 1312, 1317 (5th Cir. 1977).

> Of course, the later officials must confine their intrusion to the scope of the original invasion unless a warrant or one of the exceptions to the warrant requirement justifies a more thorough or wide ranging search.

Id. at fn. 9.

The only evidence regarding Detective Griffie's entry into the house was that he did it for the purpose of caring for the children. Since that is the role the trial court implicitly found the uniformed officers to be serving, Detective Griffie's intrusion was limited to the scope of the original intrusion and was, therefore, legal notwithstanding the exigency no longer existed.

The dissent's suggestion that reliance on the necessary implication in the trial court's order is illogical depends on the dissent's unfounded speculation regarding the trial court's reasoning. Without reliance on such speculation, a clear-eyed reading of the trial court's order reveals that without such an implied finding, the order makes no sense. We are unwilling to dismiss so lightly the reasoning of the trial court.

2. Nonetheless, if the trial court's order were to be construed as not to include a holding that the uniformed officers were legitimately present to care for the children, the fact that the children were without responsible adult supervision because of the action of police officers would constitute an exigent circumstance that would authorize Detective Griffie to enter the home to assist the children. A law enforcement officer may make a legally permissible warrantless entry into a residence when exigent circumstances exist. *State v. David,* supra at 536 (3). Knowledge or the reasonable belief that minor children in a residence are without adult supervision is an exi-

gent circumstance that authorizes police entry to help those believed to be in need of immediate aid. *State v. Jones*, 937 P2d 310, 317 (Ariz. 1997); *State v. Plant*, 461 NW2d 253 (Neb. 1990); *State v. Copeland*, 631 S2d 1223 (La. App. 1994); *State v. Garland*, 636 A2d 541 (N.J. App. 1994); *State v. Jones*, 608 P2d 1220 (Ore. App. 1980). The temporary care of minor children left without adult supervision by police action requires police to care for the children until responsibility for their care and custody is undertaken by a responsible adult. See *Witherspoon v. United States*, 838 F2d 803, 807 (5th Cir. 1988); *People v. Sutton*, 65 Cal. App. 3d 341 (1976). Indeed, for law enforcement officers to leave minor children unattended after removing the person providing the children with adult supervision may violate the children's right to due process. *White v. Rochford*, 592 F2d 381 (7th Cir. 1979).

The foreign authority cited by the dissent for the proposition that the police may not unnecessarily or unreasonably create an exigency and then take advantage of that exigency are imminently sensible. Indeed, the appellate courts of this State have made similar holdings, such as that in *Collins v. State*, 161 Ga. App. 546 (1) (287 SE2d 708) (1982): "This court would be remiss in its duty if it permitted artificially created exigent circumstances." Permitting the police to take all the adults from a home for the purpose of leaving the children without responsible adult supervision and thereby justify a warrantless entrance would certainly violate the Fourth Amendment rights of the adult residents. However, suggesting the cited cases have any application to the present case is specious: there is no evidence and no suggestion that appellee Pittman or any other responsible adult was removed from the home for the purpose of creating such an exigency.

In light of the applicable authority cited above, it is clear that the absence of responsible adult supervision of children is an exigent circumstance justifying a warrantless entry. However, the trial court ruled in the present case that no exigent circumstances existed because the young victim was dead and police officers were on the scene to care for the surviving children. The second part of that conclusion requires that the trial court take on the role of determining which law enforcement officer should make arrangements for the care of the children, holding in effect that Detective Griffie was not the appropriate officer. It is not the role of the courts to assign duties to police officers, and the trial court's determination that Detective Griffie was not authorized to enter the home because police officers were already there was an unwarranted usurpation of authority rightfully in the hands of police authorities. Thus, there is no legal basis for the trial court's conclusion that the uniformed officers could care for the children, but Detective Griffie could not.

3. While we must accept findings by a trial court which are supported by the evidence, and must construe the evidence to support the trial court's findings and judgments (*Tate v. State*, 264 Ga. 53 (1) (440 SE2d 646) (1994)), we are not bound by findings which are clearly erroneous. *State v. David*, supra at 535 (1). Here, the trial court's ruling is clearly erroneous. If the uniformed officers were legally present to take care of the children, Detective Griffie's entry was legal and his actions in the home were consistent with the scope of that original legal police presence. If the uniformed officers were not there to care for the children, the absence of responsible adult supervision constituted exigent circumstances authorizing Detective Griffie's entry, and the trial court's mistaken assumption of authority to determine which police officer may perform which police function rendered its finding regarding exigent circumstances clearly erroneous. Using either analysis, the trial court's grant of the motion to suppress must be reversed.

*Judgment reversed. All the Justices concur, except Fletcher, P. J., and Sears and Carley, JJ., who dissent.*

CARLEY, Justice, dissenting.

In order to justify its reversal of the trial court's grant of a motion to suppress in this distressing prosecution involving the alleged abuse and murder of a young child, the majority makes wholly unwarranted assumptions regarding the trial court's ruling and the evidence and, additionally, fashions an unsupported holding that an exigency created by the law enforcement officers themselves can authorize a subsequent warrantless search and seizure.

The Supreme Court of the United States has mandated that state courts exclude evidence obtained in an unconstitutional search and seizure. *Mapp v. Ohio*, 367 U. S. 643 (81 SC 1684, 6 LE2d 1081) (1961). The Fourth Amendment has no exception for troubling cases and "we should not let hard cases make bad law." *Scarborough v. Long*, 186 Ga. 412, 417 (2) (197 SE 796) (1938). Impartial judges cannot abandon the applicable rule of law because of a case's "immediate overwhelming interest which appeals to the feelings and distorts the judgment" and seems to "exercise a kind of hydraulic pressure which makes what previously was clear seem doubtful, and before which even well settled principles of law will bend." *Northern Securities Co. v. United States*, 193 U. S. 197, 400 (24 SC 436, 48 LE 679) (1904) (Holmes, J., dissenting).

[W]e are a nation of laws, and it is the duty of this Court to ensure that the State itself follows the laws of criminal procedure in the enforcement of our criminal statutes for the protection of all citizens. The law cannot be bent because of

the culpability of the defendant, for that case would then become the precedent by which the truly innocent would be incarcerated. This is the price we pay to ensure the integrity and fairness of our criminal justice system and to ensure that the government conducts itself within the constitutional and statutory constraints provided by law.

*Bowers v. State*, 221 Ga. App. 886, 889 (473 SE2d 201) (1996).

In Division 1, the majority opines that the legality of the uniformed officers' presence was "[n]ecessarily implicit" in, and "crucial" to the rationale of, the trial court's holding that no exigent circumstances existed to authorize Detective Griffie's entry. However, any such inference is entirely illogical. Indeed, it is far more likely that the trial court did not determine, but rather pretermitted, the issue of whether the presence of the uniformed officers was lawful. The majority's supposedly necessary inference is no more valid than the obviously invalid inference that, in the multitude of decisions where this Court makes an assumption for the purposes of appellate consideration only, the truth of that assumption is a necessary part of the decision's rationale.

Regardless of whether the trial court actually concluded that the uniformed officers were lawfully on the premises, its grant of the motion to suppress must be upheld if the State failed to present any evidence to support this conclusion. The State has the burden to prove that a warrantless search and seizure was lawful under the plain view doctrine. OCGA § 17-5-30 (b); *Phillips v. State*, 167 Ga. App. 260, 261 (1) (a) (305 SE2d 918) (1983). As the reviewing court, we must construe the evidence presented at the hearing on the motion to suppress most strongly in favor of upholding the trial court's judgment. *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994). See also *State v. David*, 269 Ga. 533, 535 (1) (501 SE2d 494) (1998) (Benham, C. J.). " '[I]n the absence of evidence of record *demanding* a finding contrary to the judge's determination, this court will not reverse the ruling sustaining a motion to suppress. (Cit.)' [Cit.]" (Emphasis supplied.) *State v. Williams*, 193 Ga. App. 462 (388 SE2d 55) (1989) (Benham, J.). See also *State v. Combs*, 191 Ga. App. 625, 627 (2) (382 SE2d 691) (1989) (Benham, J.). Furthermore, the issue is not simply whether Detective Griffie's conduct could have been shown to be reasonable under all of the circumstances, but whether the State did show that his entry into Appellees' residence falls within the emergency exception to the warrant requirement. *People v. Sutton*, 134 Cal. Rptr. 921, 925 (Cal. App. 1976). At the hearing, Detective Griffie testified that the uniformed officers were present prior to his arrival at the apartment. Because officers were already on the scene, there were no independent exigent circum-

stances justifying Detective Griffie's presence. Detective Griffie testified that, when he arrived, the officers made statements to him regarding the children and the transporting of the last adult from the residence to the police station. On this basis, Detective Griffie went upstairs. However, *none of the uniformed officers ever testified at the hearing on the motion to suppress.* As Appellees correctly point out, the transcript simply does not show that those officers entered and remained in the home in response to a 911 call or because of any other emergency. Thus, there is absolutely no evidence to justify the other officers' initial entry into Appellees' residence.

"In the instant case, the State has not demonstrated that a true emergency situation existed." *Nelson v. State,* 609 P2d 717, 719 (Nev. 1980). The uniformed officers' hearsay statements to Detective Griffie cannot support a finding that they were lawfully on the premises to care for the children or for any other purpose. The majority recounts these statements, and apparently assumes their admissibility, while ignoring the well-settled law of this state that inadmissible hearsay is *not probative,* even at a suppression hearing. *State v. David,* supra at 535 (1) (Benham, C. J.). If the State did not show, by probative evidence, that the original entry of the home was lawful, then there is no proof that Detective Griffie was authorized to make a subsequent plain view seizure. See *Jones v. State,* 131 Ga. App. 699, 700 (1) (206 SE2d 601) (1974). Application of the "collective knowledge" rule "has been limited in this State to factual situations where the collective knowledge of law enforcement officers has been relayed to and used by officers actually making or implementing a detention or seizure. [Cits.]" *State v. Fischer,* 230 Ga. App. 613, 615 (497 SE2d 79) (1998), overruled on other grounds, *Workman v. State,* 235 Ga. App. 800, 804 (510 SE2d 109) (1998) (a whole-court case rejecting only the incorrect Fourth Amendment analysis in *Fischer,* but not its "otherwise correct evidentiary analysis"). There is no evidence in this case of any collective knowledge or information being relayed to the uniformed officers prior to their entry, which is the intrusion at issue. *State v. Fischer,* supra at 615. Furthermore, Detective Griffie's conduct in leaving the downstairs in order to check on the children was not relevant to the initial determination of whether the other officers' presence was authorized, because their entry had occurred prior to Detective Griffie's involvement in the matter. Thus, the statements of the uniformed officers to Detective Griffie were not admissible probative evidence of the reason for their presence under the narrow "explanation of conduct" exception to the hearsay rule. *State v. Fischer,* supra at 614-615.

Detective Griffie's entry was authorized only if the prior entry of the uniformed officers was lawful or if his own warrantless entry had some *independent* justification. The majority correctly observes, and

the trial court apparently overlooked, the principle that "additional investigators or officials may . . . enter a citizen's property after one official has already intruded *legally*. [Cits.]" (Emphasis supplied.) *United States v. Brand*, 556 F2d 1312, 1317 (III) (5th Cir. 1977). However, the majority is compelled to admit that "the later officials must confine their intrusion to the scope of the original invasion unless a warrant or one of the exceptions to the warrant requirement justifies a more thorough or wide ranging search." *United States v. Brand*, supra at 1317 (III), fn. 9. The State does not claim that the exception which allegedly justified Detective Griffie's subsequent actions was any different from that which justified the uniformed officers' original presence. Additionally, the State has not shown that Detective Griffie confined his intrusion to the scope of the original entry, because it has not produced any probative evidence showing the nature of that initial entry.

In Division 2, the majority makes the extraordinary assertion that, even if the uniformed officers were not legitimately on the premises, their own action of removing responsible adult supervision while they were illegally in the residence unintentionally created an exigent circumstance that would authorize Detective Griffie's entry to assist the children. In so holding, the majority radically departs from settled Fourth Amendment jurisprudence. "Many . . . courts have held that a warrantless entry will not be justified by a police-created exigency, at least where the police conduct was unnecessary in view of available alternatives." *State v. Kelly*, 963 P2d 1211, 1213 (Idaho App. 1998). The police may not, by an unreasonable search or seizure, "create the emergency situation which they advance as the predicate for their warrantless entry." *Nelson v. State*, supra at 719. Furthermore, if the temporary care of children were considered to be an independent justification for Detective Griffie to join other officers who were already at the scene for the identical reason, then the police could always remove the taint of any *unlawful* entry into a citizen's home for a laudable purpose merely by bringing in more officers.

I am constrained to conclude that the State failed to meet its burden of establishing that the seizure accomplished by Detective Griffie was lawful. The record contains absolutely no evidence that the prior entry of the uniformed officers was lawful or that Detective Griffie's own warrantless entry had some independent justification. Accordingly, this Court is without any authority whatsoever to reverse the trial court's grant of the motion to suppress the evidence which Detective Griffie seized. See *State v. Fischer*, supra; *Phillips v. State*, supra.

I note, however, that the State's failure to prove the lawfulness of the seizure would result only in the suppression of that particular

evidence at trial. *United States v. Blue*, 384 U. S. 251, 255 (86 SC 1416, 16 LE2d 510) (1966). The suppression of unlawfully seized evidence "does not bar a criminal prosecution. [Cits.]" *State v. Brown*, 198 Ga. App. 239, 241 (401 SE2d 295) (1990). See also *United States v. Blue*, supra at 255. Such a drastic extension of the exclusionary rule, especially under the grievous circumstances which might be present in this case, would "increase to an intolerable degree interference with the public interest in having the guilty brought to book." *United States v. Blue*, supra at 255. See also *Van Nice v. State*, 180 Ga. App. 112, 121 (7) (348 SE2d 515) (1986).

A summary of the reasons for my dissent in this important case is in order: In an attempt to meet the State's burden of proving the lawfulness of a warrantless search and seizure in defendants' residence under the plain view doctrine, the prosecutor presented evidence only of the body of a child who was the alleged victim of a homicide, the presence of uniformed officers in the residence which is unexplained by any probative evidence whatever, and the later arrival of an additional officer who testified to his subsequent discovery and seizure of the items sought to be suppressed. However, the prosecutor introduced absolutely no probative evidence of the reason for the uniformed officers' initial entry or of any independent justification for the additional officer's entry. Therefore, the grant of defendants' motion to suppress was absolutely necessary, notwithstanding the possibility that the uniformed officers could have testified that exigent circumstances justified the initial entry and that there was a lawful necessity for their continuing presence. Because what *might* have been shown was *not* shown, I dissent to this Court's reversal of the trial court's grant of the motion to suppress.

I am authorized to state that Presiding Justice Fletcher and Justice Sears join in this dissent.

DECIDED MARCH 2, 2001 —
RECONSIDERATION DENIED APRIL 6, 2001.

*Paul L. Howard, Jr., District Attorney, Anne E. Green, Peggy R. Katz, Assistant District Attorneys*, for appellant.

*Larry D. Wolfe, Bruce S. Harvey, August F. Siemon III, Derek H. Jones*, for appellees.