## A10A1450. WILLIAMS v. THE STATE.
(700 SE2d 653)

ELLINGTON, Judge.

Following a bench trial, the Superior Court of Cobb County found Joseph Williams guilty beyond a reasonable doubt of possession with intent to distribute marijuana, OCGA § 16-13-30 (b). He appeals from the denial of his motion for new trial, contending that the trial court erred in denying his motion to suppress. For the following reasons, we reverse.

> While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.

(Citations omitted.) *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d

---

474) (1994). The undisputed evidence in this case shows the following facts.

At about 1:45 a.m. on September 17, 2003, a Powder Springs police officer observed a car which was approaching him cross the yellow centerline of Hopkins Road. The officer could not determine whether a male or female was driving the car. After executing a "U-turn" so that he could follow the car, the officer saw that the car had a broken right taillight. The officer lost sight of the car when the driver of the car turned off its headlights and turned right off Hopkins Road. The officer could not determine exactly where the driver had turned, so he asked other officers in the area to help search for the car. A few minutes later, another officer located a car with a broken right taillight; the car was warm to the touch, indicating it had recently been driven. The car was parked at a residence on Hopkins Road, and there were tire tracks in the grass leading to the car. One of the officers detected an odor of alcohol around the vehicle.

The officer who had located the car knocked on the front door of the house. When a woman came to the door, the officer asked her who the car belonged to, and she responded that it was her uncle's car and that her uncle was not there. The officer described the woman's demeanor as surprised and "very, very irate." The woman told both officers to "get off [my] f—ing property without a warrant." The officers then informed the woman that they were going to impound the vehicle so they could conduct an investigation to determine who had been driving the car when it crossed the centerline.

At that point, Williams came outside and asked what was going on. An officer detected an odor of alcohol coming from him and asked him who owned the car. Williams said that the car belonged to his uncle and that the car had not been moved in several days. When the officers told him they were going to impound the car, Williams told them that they could not tow the car without a warrant. Because the woman continued to yell and swear at the officers, they instructed Williams to take her back into the house, stating that they were going to arrest her if she continued to use profane language outside her home. When the woman did not immediately go inside, the officers told her they were going to arrest her. The woman started to back through the doorway to the house, but the officers grabbed her and placed her under arrest for disorderly conduct. Williams then said something unintelligible in a loud voice and tried to walk around the officers and go inside, but another officer grabbed him and arrested him for disorderly conduct, also.

While Williams and the woman were being detained in separate police cars, the woman began to yell at the officers that they could

not take her to jail because her little sister was upstairs sleeping. When asked how old the little sister was, the woman responded, "none of your f—ing business." Despite being asked repeatedly how old her sister was, the woman refused to answer.

Because the officers were concerned about the welfare of the child, an officer entered the house to look for her. As he climbed the stairs to the bedrooms, a girl who appeared to be about 16 or 17 years old walked past him on her way downstairs. According to the officer, he asked the girl if there was anyone else in the house, and the girl responded, "I don't think so."[1] Without asking the girl whether there was a younger child in the house or escorting the girl outside and asking Williams or the woman whether the girl was the "little sister" to whom the woman had referred, the officer simply continued up the stairs and walked into one of the bedrooms. The officer turned on his flashlight and looked under the bed, and, then, when he lifted up the bed's sheets, he saw several plastic bags of suspected marijuana. He went downstairs and reported his findings to the other officer.

The officers seized the suspected contraband, and the State charged Williams with, inter alia, possession with intent to distribute marijuana.[2] During the hearing on Williams' motion to suppress, the State stipulated that the search of Williams' residence was not conducted incident to an arrest. Instead, the State argued that the officer was not actually conducting a search at all when he found the marijuana, but, instead, was lawfully inside the house due to an exigent circumstance, specifically, the possibility that there was a child who would be left without adult supervision due to the arrest of Williams and the woman. To that end, both officers who testified at the hearing repeatedly insisted that the *only* reason the officer entered the house was to check on the welfare of the woman's younger sister, which, in turn, was necessary because both Williams and the woman had been arrested.

At the end of the motion hearing, the trial court stated that, because the woman had told the officers that her little sister was in the house and then repeatedly refused to tell the officers how old the girl was, the officers were justified in going inside without a warrant to find the girl and to ensure that she was not left unsupervised. According to the court, "You can't just arrest adults[,] leaving a child there to fend for him or herself." The court emphasized that the

---

[1] Notably, there is no evidence as to whether the teenager knew or even could have known at this point that both her sister and Williams had been arrested and were being detained outside in police cars.

[2] The State did not cite Williams for any traffic violation or prosecute him on a disorderly conduct charge.

search was only necessary because of the *woman's* refusal to tell the officers the age of the child. "She could have said she'll be all right, so forth. She didn't say that. She just was so belligerent. On the one hand, she was trying to persuade the police officers not to arrest her and then[,] in doing that, she authorized them[,] in order to take care of a child, to enter the house."

Although the court denied Williams' motion to suppress based upon its conclusion that exigent circumstances authorized the officer's initial entry into the house, it did not address several related issues, including whether Williams' arrest, which created the exigent circumstance, was supported by probable cause; whether the officer exceeded the scope and purpose of the initial entry when he continued to search the house after seeing the teenaged girl walking down the stairs; or whether, under the circumstances, the officer was authorized to lift up the bed sheets, thereby exposing the bags of suspected marijuana. Following the denial of the motion to suppress, the court conducted a bench trial and found Williams guilty of possession with intent to distribute marijuana.

1. On appeal, Williams contends that the officers had no authority to enter his home because his arrest was not supported by probable cause and, as a result, the officers were not authorized to arrest him and remove him from his home. According to Williams, because there would have been no exigent circumstance without his unlawful arrest, the State cannot rely on the exigent circumstance to justify the officer's warrantless entry into his home. We agree.

> [T]he Fourth Amendment usually prohibits police officers from entering a person's home without the homeowner's consent, absent a warrant allowing them to do so. An exception to the warrant requirement exists, however, where the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.

(Citations and punctuation omitted.) *Love v. State*, 290 Ga. App. 486, 487 (659 SE2d 835) (2008). One type of exigent circumstance exists when a warrantless entry is necessary for the police

> to preserve public order, to maintain the peace, and to protect lives, persons, property, health and morals. In these cases, police do not enter a residence for the purpose of arresting or seizing evidence against an occupant; rather, they enter in response to what they reasonably perceive as an emergency involving a threat to life or property.

(Citations and punctuation omitted.) Id. at 488.

Knowledge or the reasonable belief that minor children in a residence are without adult supervision is an exigent circumstance that authorizes police entry to help those believed to be in need of immediate aid. The temporary care of minor children left without adult supervision by police action requires police to care for the children until responsibility for their care and custody is undertaken by a responsible adult. Indeed, for law enforcement officers to leave minor children unattended after removing the person providing the children with adult supervision may violate the children's right to due process.

(Citations omitted.) *State v. Peterson*, 273 Ga. 657, 659-660 (2) (543 SE2d 692) (2001). In *Peterson*, the Supreme Court of Georgia also emphasized, however, that it

would be remiss in its duty if it permitted artificially created exigent circumstances. Permitting the police to take all the adults from a home for the purpose of leaving the children without responsible adult supervision and thereby justify a warrantless entrance would certainly violate the Fourth Amendment rights of the adult residents.

(Citation and punctuation omitted.) Id. at 660 (2).

(a) *There was no probable cause to arrest Williams for a traffic violation.* The State failed to present any evidence that Williams owned the car at issue or that he had been the driver of the car when it crossed the centerline. In fact, the State never established to whom the car belonged, and the police officer who originally observed the car cross the centerline admitted that he was unable to determine who was driving the car at the time. Consequently, there was no probable cause to arrest Williams for any traffic violation.

(b) *There was no probable cause to arrest Williams for disorderly conduct under OCGA § 16-11-39.*[3] Neither officer testified that Williams did anything to place them in reasonable fear of their safety,

---

[3] Under OCGA § 16-11-39 (a),

[a] person commits the offense of disorderly conduct when such person commits any of the following:

(1) Acts in a violent or tumultuous manner toward another person whereby such person is placed in reasonable fear of the safety of such person's life, limb, or health;

(2) Acts in a violent or tumultuous manner toward another person whereby the property of such person is placed in danger of being damaged or destroyed;

(3) Without provocation, uses to or of another person in such other person's presence, opprobrious or abusive words which by their very utterance tend to incite to an immediate breach of the peace, that is to say, words which as a matter of

did anything to place property in danger of being damaged or destroyed, used "fighting words" as defined by the statute,[4] or used obscene or profane language in the presence of someone younger than 14 years old. Although the woman's actions or words may have justified *her* arrest for disorderly conduct, the State cannot attribute those actions or words to Williams and prosecute him accordingly. Thus, the officers' arrest of Williams for disorderly conduct was unauthorized.[5]

(c) *Absent a basis to lawfully arrest Williams, there was no exigent circumstance to justify the warrantless entry into his home.* The undisputed evidence of record shows that, if Williams had not been illegally detained, he could have checked on the welfare of the child himself and, if necessary, cared for her while the officers transported the woman to jail.

Accordingly, the trial court erred in concluding that there was an exigent circumstance which justified the officer's warrantless entry into Williams' home. Consequently, because there were no other circumstances which justified the officer's warrantless entry, the trial court erred in denying Williams' motion to suppress evidence recovered as a result of the officer's unauthorized search of his home.

2. Williams also argues that, even if the initial warrantless entry had been authorized by an exigent circumstance, the officer had no authority to search the bedroom after encountering the teenaged girl on the stairs, because the search exceeded the scope and purpose of the warrantless entry. In light of our decision in Division 1, supra, this alleged error is moot.

*Judgment reversed. Andrews, P. J., and Doyle, J., concur.*

---

common knowledge and under ordinary circumstances will, when used to or of another person in such other person's presence, naturally tend to provoke violent resentment, that is, words commonly called "fighting words"; or

(4) Without provocation, uses obscene and vulgar or profane language in the presence of or by telephone to a person under the age of 14 years which threatens an immediate breach of the peace.

[4] "Fighting words" are statements which have "a direct tendency to cause immediate acts of violence by the person to whom the speech or act [is] addressed." (Punctuation and footnote omitted.) *In the Interest of L. E. N.*, 299 Ga. App. 133, 134-135 (1) (682 SE2d 156) (2009) (physical precedent only) ("To ensure no abridgment of constitutional rights, the application of OCGA § 16-11-39's proscription on 'fighting words' must necessarily be narrow and limited." Therefore, an appellate court reviewing a conviction for disorderly conduct arising from the use of "fighting words" must examine "not only the words used but also the circumstances and context in which they were said.") (punctuation and footnotes omitted).

[5] To the extent the State argues that Williams could have been arrested for obstruction of a police officer, the State presented no evidence to support such a charge. See *Beckom v. State*, 286 Ga. App. 38, 41-42 (2) (648 SE2d 656) (2007) (evidence that the defendant did not initially answer the door when police officers knocked, did not answer the telephone when they called, and was verbally abusive to the officers was insufficient to support a conviction for obstruction of a police officer). Moreover, the officers *did not* arrest Williams for obstruction. Thus, this argument lacks merit.

DECIDED AUGUST 24, 2010.

*David J. Koontz,* for appellant.
*Patrick H. Head, District Attorney, Dana J. Norman, Assistant District Attorney,* for appellee.