**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-1496

SLOAN PLEASANTS,

Plaintiff – Appellant,

v.

TOWN OF LOUISA; ROBERT RIGSBY, sued in his individual capacity,

Defendants – Appellees.

Appeal from the United States District Court for the Western District of Virginia, at Charlottesville. Norman K. Moon, Senior District Judge. (3:11-cv-00032-NKM-BWC)

Argued: March 22, 2013                    Decided: May 7, 2013

Before SHEDD, and FLOYD, Circuit Judges, and Joseph R. GOODWIN, District Judge for the Southern District of West Virginia, sitting by designation.

Affirmed in part, reversed in part, and remanded by unpublished opinion. Judge Shedd wrote the opinion in which Judge Floyd and Judge Goodwin joined.

**ARGUED:** Jeffrey Edward Fogel, Steven David Rosenfield, Charlottesville, Virginia, for Appellant. Maurice Scott Fisher, Jr., HARMAN, CLAYTOR, CORRIGAN & WELLMAN, Richmond, Virginia, for Appellees. **ON BRIEF:** David P. Corrigan, Jeremy D. Capps, HARMAN, CLAYTOR, CORRIGAN & WELLMAN, Richmond, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

Sloan Pleasants filed this action pursuant to 42 U.S.C. § 1983, alleging that Officer Robert Rigsby unlawfully entered her home and arrested her. The district court granted summary judgment to Officer Rigsby on the unlawful-entry claim and dismissed the false-arrest claim. We affirm the grant of summary judgment on the unlawful-entry claim, reverse the dismissal of the false-arrest claim, and remand the case for further proceedings.

I.

A.

Before setting out the facts of this case, we pause to note the peculiar procedural posture of this case. After the defendants filed a motion to dismiss all of Pleasants's claims, the district court granted limited discovery on Pleasants's unlawful-entry claim. J.A. 16–17. The parties engaged in discovery on this issue, but based on the depositions of Pleasants and Officer Rigsby included in the Joint Appendix on appeal, this discovery also encompassed testimony about the false-arrest claim. See J.A. 55–63 (Pleasants's deposition); J.A. 115–18 (Rigsby's deposition). Those parts of the depositions related to the arrest, however, were never put before the district court, which decided the unlawful-entry claim under the summary judgment standard and the false-arrest

2

claim under the motion to dismiss standard.[1]  J.A. 196–204 (unlawful-entry claim); J.A. 205–10 (false-arrest claim).  Thus, we can consider the developed record in evaluating the district court's decision to grant summary judgment on the unlawful-entry claim, but in reviewing the district court's decision to dismiss the false-arrest claim, we are limited to the allegations in the complaint, without any benefit of the facts developed in discovery.

## B.

We review the facts relevant to the unlawful-entry claim in the light most favorable to Pleasants, the nonmoving party.  See Laing v. Fed. Express Corp., 703 F.3d 713, 714 (4th Cir. 2013).

On November 1, 2009, Kevin Pleasants, Pleasants's ex-husband, called the police and asked for an officer to go with him to Pleasants's home to pick up his eleven-year-old daughter, K.P., who "was bawling . . . [and] hysterical on the phone with him" because Pleasants was threatening to throw her out of the house.  J.A. 89.  During this time, Mr. Pleasants was in a custody battle with Pleasants over their daughter.  Mr. Pleasants wanted an officer to witness the interaction because

---

[1] Had this evidence been before the district court when it made its decision, we could have considered it on appeal and evaluated the false-arrest claim under the summary judgment standard.  See Dean v. Pilgrim's Pride Corp., 395 F.3d 471, 474 (4th Cir. 2005).

Pleasants had accused him of having intimidated her in the past, and he told the dispatcher that his ex-wife was "very violent" and "possibly intoxicated." J.A. 131–32. After Officer Rigsby and Mr. Pleasants arrived at Pleasants's house, Officer Rigsby stood back, observing the conversation but not participating. Pleasants initially refused to let K.P. leave with Mr. Pleasants and shut the door, but K.P. eventually came out and left with her father, to which Pleasants acquiesced. During these events, Officer Rigsby could not hear all of the conversation, and although he noticed that Pleasants had bloodshot eyes, he could not detect that Pleasants had been drinking.

On December 13, 2009, Mr. Pleasants again called the police to have an officer go with him to Pleasants's house and perform a "welfare check" on K.P. Mr. Pleasants had returned a missed telephone call from K.P., but Pleasants would not let him speak with K.P. During this call, Mr. Pleasants heard K.P. screaming and crying in the background. Officer Rigsby again went with Mr. Pleasants to Pleasants's home. Pleasants opened the door and told them both to leave. Mr. Pleasants said that he wanted to see K.P., who was standing approximately ten feet inside the doorway. As Pleasants was trying to close the door, Officer Rigsby entered the house to talk to K.P. and check on her.

4

C.

In reviewing the allegations in the complaint relevant to the false-arrest claim, "we accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." Philips v. Pitt County Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

Two paragraphs in the complaint discuss the false arrest. See J.A. 7–8 (¶¶ 12–13). Pleasants alleges that after Officer Rigsby entered the house, he began to question K.P.

> In response to one of [Officer] Rigsby's questions, [K.P.] stated that [Pleasants] had slapped her on her leg where her arm was resting. [K.P.] also told [Officer] Rigsby that her mother grabbed her by her wrist and told her to take a shower. [Officer] Rigsby saw no welts or other indicia of even a mild or minor physical injury.

J.A. 7–8 (¶¶ 12–13).

Based on those statements, Rigsby arrested Pleasants, and she was charged with assault and battery against a family member, in violation of Va. Code § 18.2-57.2. The charge was ultimately dropped by the Commonwealth's Attorney.

D.

Pleasants then filed this suit against the Town of Louisa and Officer Rigsby. Pursuant to 42 U.S.C. § 1983, she sued Officer Rigsby under theories of unlawful entry, false arrest, and malicious prosecution; she also filed state-law claims of

5

malicious prosecution and gross negligence against him.  She sued the Town, pursuant to § 1983, for failure to train.

The Town and Officer Rigsby filed a Rule 12(b)(6) motion to dismiss the complaint.  Before deciding this motion, the district court granted limited discovery on the unlawful-entry claim.  After this limited discovery, the court dismissed all of Pleasants's claims.  Pleasants now appeals the district court's decision to grant summary judgment to Officer Rigsby on the unlawful-entry claim and to dismiss the false-arrest claim.[2]

## II.

Section 1983 "is designed to provide a comprehensive remedy for the deprivation of constitutional rights."  Smith v. Hampton Training Sch. for Nurses, 360 F.2d 577, 581 (4th Cir. 1966).  To state a claim under § 1983, "a plaintiff must establish three elements . . . : (1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law."  Jenkins v. Medford, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

Not all violations of a plaintiff's rights, however, will subject a defendant to liability.  The doctrine of qualified

---

[2] Although Pleasants's notice of appeal challenges the district court's entire decision, J.A. 220, she pursues only her unlawful-entry and false-arrest claims on appeal, Appellant's Reply Br. at 11 n.4.

6

immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). It is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

Qualified immunity is a two-step inquiry "that asks first whether a constitutional violation occurred and second whether the right violated was clearly established." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc) (quoting Melgar v. Greene, 593 F.3d 348, 353 (4th Cir. 2010)). We need not, however, necessarily address these inquiries in that order. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

## III.

We first address Pleasants's unlawful-entry claim. She argues that Officer Rigsby is not entitled to qualified immunity because his entry into her home on December 13, 2009, was not justified by any exigency. We disagree.

### A.

On this claim, the district court permitted limited discovery and considered this evidence in holding that Officer Rigsby was entitled to qualified immunity. When matters outside the pleadings are considered, a motion to dismiss must be

7

treated as a motion for summary judgment. Fed. R. Civ. P. 12(d). We review a grant of summary judgment de novo, "applying the same legal standards as the district court." Pueschel v. Peters, 577 F.3d 558, 563 (4th Cir. 2009). Summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," based on the "materials in the record." Fed. R. Civ. P. 56. At this stage, we must view all evidence in the light most favorable to the nonmoving party. Rowzie v. Allstate Ins. Co., 556 F.3d 165, 167 (4th Cir. 2009).

B.

The Fourth Amendment protects "[t]he right of the people to be secure in their . . . houses . . . against unreasonable searches." U.S. Const. amend. IV. Because "the Fourth Amendment has drawn a firm line at the entrance to the house," a warrantless entry into a home by police is "presumptively unreasonable." Payton v. New York, 445 U.S. 573, 591, 586 (1980). A warrantless entry is permitted, however, in certain instances "because the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" Brigham City, Utah v. Stuart, 547 U.S. 398, 403 (2006).

One such instance is exigent circumstances. Coolidge v. New Hampshire, 403 U.S. 443, 474-75 (1971). One type of exigency is the emergency-aid exception to the warrant

8

requirement, which allows police to enter a home "to protect an occupant from imminent injury." Kentucky v. King, 131 S. Ct. 1849, 1856 (2011) (quoting Brigham City, Utah, 547 U.S. at 403). Courts have shown particular concern for emergency situations of domestic violence, given their "combustible nature," Tierney v. Davidson, 133 F.3d 189, 197 (2d Cir. 1998), as well as for children who may be in danger, see Hunsberger v. Wood, 570 F.3d 546, 555 (4th Cir. 2009) (relying in part on the fact that a child was in a home in which she was not supposed to be in holding that an officer reasonably believed that exigent circumstances existed to enter that home); see also Doe v. Heck, 327 F.3d 492, 517 n.20 (7th Cir. 2003) (observing "that the exigent circumstances exception . . . gives the State the ability to take immediate action to ensure the physical safety of a child suspected of abuse who is located on private property"). In determining whether an officer's entry into a home was justified under this doctrine, "we ask whether the circumstances known to [the officer] would create an 'objectively reasonable belief that an emergency existed that required immediate entry to render assistance or prevent harm to persons or property within.'" Hunsberger, 570 F.3d at 555 (quoting United States v. Moss, 963 F.2d 673, 678 (4th Cir. 1992)).

When Officer Rigsby went with Mr. Pleasants to Pleasants's home on the night of December 13, Officer Rigsby was making his second visit to the home in six weeks because of circumstances that placed the child in a volatile and potentially dangerous situation. Despite Pleasants's attempt to characterize her behavior during the November incident as "cooperative, friendly, and gracious in allowing her daughter to go with [Mr. Pleasants]," Appellant's Br. at 13, this incident was far more contentious than that. Although Pleasants eventually acquiesced in K.P. leaving with Mr. Pleasants, Officer Rigsby could have reasonably viewed her shutting the door before K.P. finally reopened the door to leave as hostility and a desire to keep K.P. away from Mr. Pleasants, no matter K.P.'s safety or condition.

On the night of December 13, Officer Rigsby was told that K.P. was screaming and crying in the background of the telephone and that Pleasants would not let Mr. Pleasants speak with K.P. Mr. Pleasants explicitly requested that Officer Rigsby do a welfare check on K.P., reflecting his concern about his daughter. When Officer Rigsby arrived at the house and in contrast to the November incident, Pleasants refused to let K.P. speak with Officer Rigsby or Mr. Pleasants. This refusal left Officer Rigsby unsure of K.P.'s well-being.

10

Ultimately, we need not decide whether these facts[3] created an exigency permitting Officer Rigsby to enter Pleasants's home pursuant to the Fourth Amendment. Under the doctrine of qualified immunity, an officer is not liable for his actions, even if those actions would have actually violated the Constitution, if no clearly established law prohibited those actions. See Pearson, 555 U.S. at 236.

Although courts have long held that the sanctity of the home is "[a]t the very core" of the Fourth Amendment, Silverman v. United States, 365 U.S. 505, 511 (1961), numerous recent decisions have shown great concern for domestic violence, see, e.g., Georgia v. Randolph, 547 U.S. 103, 118–19 (2006), and for children who may be in danger, see, e.g., Hunsberger, 570 F.3d at 555; see also United States v. Taylor, 624 F.3d 626, 632 (4th Cir. 2010) ("[T]he absence of responsible adult supervision of children is an exigent circumstance justifying a warrantless entry." (quoting Georgia v. Peterson, 543 S.E.2d 692, 696 (Ga. 2001))). In the absence of caselaw addressing what

---

[3] That much of what Officer Rigsby knew was told to him by Pleasants's ex-husband does not mean that Officer Rigsby could not credit that information. The record reflects no reason why Officer Rigsby should have disbelieved Mr. Pleasants's statements. Furthermore, given the dangers of domestic violence and the need to protect children, that a police officer errs on the side of believing a statement and subsequently checking on the child is often the preferable choice.

11

circumstances are sufficient to constitute an exigency under the emergency-aid exception to allow police to check on a child, Officer Rigsby cannot be charged with having notice that the emergency-aid exception was unjustified here. See Robles v. Prince George's County, Md., 302 F.3d 262, 270-71 (4th Cir. 2002) ("Although notice does not require that the 'very action in question has previously been held unlawful,' it does mean that 'in the light of pre-existing law the unlawfulness must be apparent.'" (quoting Wilson v. Layne, 526 U.S. 603, 615 (1999))).

Because no clearly established law prohibited Officer Rigsby's warrantless entry into the home to ensure K.P.'s well-being, the district court properly granted summary judgment to Officer Rigsby on this claim.

IV.

We turn now to Pleasants's false-arrest claim. Pleasants argues that Officer Rigsby is not entitled to qualified immunity based solely on the allegations in the complaint because under Virginia law, a parent is allowed to use corporal punishment on a child, meaning that any touching of a child by a parent cannot automatically create probable cause for arrest. We agree.

A.

Unlike the unlawful-entry claim, the district court dismissed this claim pursuant to Federal Rule of Civil Procedure

12

12(b)(6), looking only at the allegations in the complaint.[4]  We review the grant of a motion to dismiss de novo.  Decohen v. Capital One, N.A., 703 F.3d 216, 222 (4th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

                              B.

        The Fourth Amendment also protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures."  U.S. Const. amend. IV.  An arrest is a seizure under the Fourth Amendment, and such a seizure is reasonable only if based on probable cause.  Wilson v. Kittoe, 337 F.3d 392, 398 (4th Cir. 2003).  Probable cause "to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  Michigan v. DeFillippo, 443 U.S. 31, 37 (1979).  Whether probable cause exists must be determined "in

_____

        [4] At oral argument, Officer Rigsby insisted that this is the proper procedural posture of this case.

13

the light of all of the surrounding circumstances." Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir. 1998). In determining what amounts to probable cause, we have noted that "[p]robable cause requires more than 'bare suspicion' but requires less than evidence necessary to convict." Id.

Virginia maintains the common-law definition of assault and battery. Montague v. Virginia, 684 S.E.2d 583, 588–89 (Va. 2009). Thus, the slightest touching may be sufficient to constitute a battery. Lynch v. Virginia, 109 S.E. 427, 428 (Va. 1921). Yet Virginia allows parents to use corporal punishment with children, although that "right cannot be used as a cloak for the exercise of uncontrolled passion, and that such person may be criminally liable for assault and battery if he inflicts corporal punishment which exceeds the bounds of due moderation." Harbaugh v. Virginia, 167 S.E.2d 329, 332 (Va. 1969). Given this parental right, some touching of a child by a parent—even if such a touching between people without a parent-child relationship could be a battery—must be legally permissible.

This conclusion requires us to reject Officer Rigsby's contention that any touching by a parent of a child creates probable cause for an officer to arrest the parent and then a

jury is left to determine whether that force was excessive.[5] Such a position is legally untenable in light of Virginia law. A parent often must use <u>de minimis</u> force to reprimand or even protect his children, and such force cannot always lead to the possibility that a police officer can arrest the parent. We do not attempt to define here what level of force must be used by a parent to create probable cause for arrest, for such determinations are typically fact-specific. We simply state for purposes of this case that the application of <u>de minimus</u> force by a parent does not automatically create probable cause for arrest.

Turning to the facts alleged in the complaint, Pleasants has stated a plausible claim for relief. The complaint alleges that Officer Rigsby knew Pleasants touched her daughter twice—a slap on the hand and a grab of the wrist. It also alleges that Officer Rigsby saw no visible injuries on K.P. Based on these allegations alone, Pleasants has pled a plausible claim that Officer Rigsby lacked probable cause to arrest her. Virginia

_____

[5] Officer Rigsby's reliance on Va. Code § 19.2-81.3(B), which requires an officer to arrest a person who the officer believes has violated Va. Code § 18.2-57.2, is misplaced. Section 19.2-81.3(B) still requires the officer to have probable cause for arrest. As we explain here, probable cause cannot always exist solely from a witness's statement without any more context because Virginia recognizes the right of corporal punishment, thereby permitting some level of physical force against the child by the parent.

15

law permits some physical contact of a child by a parent, and without more factual development of the details of Pleasants's contact with K.P., Pleasants's allegations can support a claim that contact as described in the complaint is permissible under Virginia law. Thus, at this stage, we cannot say that Officer Rigsby did not violate Pleasants's constitutional right to be free from arrest without probable cause.

Furthermore, we cannot say, based on the complaint's allegations, that Officer Rigsby's decision to arrest Pleasants did not violate clearly established law. Virginia expressly allows some degree of corporal punishment by a parent. Harbaugh, 167 S.E.2d at 332 (stating that "parents or persons standing in loco parentis may administer such reasonable and timely punishment as may be necessary to correct faults in a growing child"). At this stage, Pleasants has pled a plausible claim that, based on Virginia law allowing corporal punishment and in the absence of more factual context for Pleasants's use of force, probable cause for her arrest was so lacking that Officer Rigsby violated her clearly established right not to be arrested without probable cause. See Henderson v. Simms, 223 F.3d 267, 273 (4th Cir. 2000) ("This Court has held that the Fourth Amendment right to be arrested only on probable cause is clearly established."). Thus, Officer Rigsby is not entitled to qualified immunity at this point. See Pinder v. Johnson, 54

16

F.3d 1169, 1173 (4th Cir. 1995) (en banc) ("Where the law is clearly established, and where no reasonable officer could believe he was acting in accordance with it, qualified immunity will not attach.").

On these pleadings, Pleasants has stated a claim for false arrest, and on the limited record before us, Officer Rigsby is not entitled to qualified immunity on this claim. Therefore, the district court erred in dismissing the false-arrest claim.[6]

V.

For the foregoing reasons, we affirm the grant of summary judgment to Officer Rigsby on the unlawful-entry claim, reverse the dismissal of the false-arrest claim, and remand the case for further proceedings consistent with this opinion.

AFFIRMED IN PART,
REVERSED IN PART,
AND REMANDED

---

[6] Of course, whether Pleasants will ultimately prevail on this claim is a different question. On remand, Officer Rigsby may present to the district court evidence from discovery relating to the false-arrest claim and move for summary judgment. The district court would then evaluate Pleasants's claim in light of this more developed factual record.